IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

      Plaintiff/Counter-Defendant,

v.                                    No. 01-3041 B

ILLINOIS VALLEY PAVING COMPANY,

      Defendant/Counter-Plaintiff.

_____

ILLINOIS VALLEY PAVING COMPANY,

      Third-Party Plaintiff,

v.

JACO AIRFIELD CONSTRUCTION, INC.,

      Third-Party Defendant.

_____

JACO AIRFIELD CONSTRUCTION, INC.,

      Fourth-Party Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

      Fourth-Party Defendants.

_____

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

      Fifth-Party Plaintiffs,

v.

AMERACE, a Division of Thomas & Betts Corporation,

Fifth-Party Defendant.

_____

ILLINOIS VALLEY PAVING COMPANY,

     Cross-Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

     Cross-Defendants.

_____

FIREMAN'S FUND INSURANCE COMPANY,

     Defendant/Cross-Claimant,

v.

JACO AIRFIELD CONSTRUCTION, INC.,
NEHRING ELECTRICAL WORKS COMPANY, and
GRAYBAR ELECTRIC COMPANY, INC.,

     Cross-Defendants.

_____

ORDER GRANTING MOTION OF PLAINTIFF MEMPHIS-SHELBY COUNTY AIRPORT
AUTHORITY FOR SUMMARY JUDGMENT AGAINST DEFENDANT ILLINOIS VALLEY
PAVING COMPANY BUT DENYING MOTION AS TO DEFENDANT FIREMAN'S FUND
INSURANCE COMPANY

_____

     Plaintiff, Memphis-Shelby County Airport Authority ("MSCAA"), brought the instant action

for breach of contract against the Defendants, Illinois Valley Paving Company ("IVP") and

Fireman's Fund Insurance Company ("FFIC") arising from a contract between MSCAA and IVP

for the reconstruction and extension of a runway at the Memphis International Airport in Memphis,

Tennessee.  Before the Court is the motion of MSCAA for summary judgment against IVP and FFIC

2

pursuant to Rule 56 of the Federal Rules of Civil Procedure. IVP and FFIC have responded, MSCAA has replied, and this motion is now ripe for disposition. For the reasons set forth below, the Plaintiff's motion for summary judgment is GRANTED at to IVP but DENIED at to FFIC.

<u>BACKGROUND</u>

The following facts are undisputed unless noted. On April 18, 1998, MSCAA and IVP entered into a contract ("Construction Contract") pursuant to which IVP agreed to act as general contractor for the reconstruction and extension of a portion of Runway 18C-36C and related taxiway (collectively referred to as the "World Runway") at the Memphis International Airport in Memphis, Tennessee ("Project 6500"). (Am. Compl. ¶ 4, Ex. A). On December 28, 2001, MSCAA filed the instant action against IVP[1] alleging that it breached the Construction Contract by installing underground airport lighting cable that did not conform to Specifications Item L-108 requiring that such cable be made of cross-linked polyethylene insulation.[2] (Am. Compl.¶ 21).

Prior to entering into the contract with MSCAA, IVP subcontracted with Jaco Airfield Construction, Inc. ("Jaco") for the installation of the electrical cable and airfield lighting system. (Am. Compl. ¶ 7). The cable in question was supplied to Jaco by Graybar Electrical Company, Inc.

---

[1] The Plaintiff subsequently amended its complaint on September 22, 2003 to name FFIC as an additional defendant.

[2]    Specification Item L-108 of the Construction Contract provides that

[u]nderground cable shall conform to the requirements of AC 1504/5345-7, Specification for L-824 Underground Electrical Cable for Airport Lighting Circuits. Type C single and multiple conductor cables rated 600 volts and 5000 volts shall have a minimum .110 cross-linked polyethylene insulation. Multiple conductor cable shall have an overall jacket.
      (a) Cable for airfield lighting service shall be No. 8 AWG, type C, copper, 7-strand, single conductor cable with 5,000 volt cross-linked polyethylene insulation.

(Am. Compl. ¶ 9; Pl.'s Resp. Opp. Def.'s Mot. Summ. J., Ex. T at L-108 .)

("Graybar") and manufactured by Nehring Electrical Works Company ("Nehring").  (Def. IVP's Response to Pl.'s Mot. Summ. J. at 2).  On December 28, 2001, MSCAA filed the instant action against IVP alleging that IVP breached the Construction Contract by installing underground airport lighting cable that failed to conform to the contractual requirement that the cable be made of cross-linked polyethylene insulation.[3]  (Am. Compl. ¶ 21).  MSCAA contends that the electrical cable and lighting system are defective and unsuitable for use in the World Runway, thereby constituting a breach of the Construction Contract by IVP.  (Am. Compl. ¶ ¶ 21-22).

Testing of various samples of cable from project 6500 revealed that some of the samples failed to meet FAA requirements for the degree of cross-linking.  (Am. Compl. ¶ 10; Pl.'s Statement of Undisputed Material Facts ¶ ¶ 23-26).  Based upon the installation of non-conforming cable, MSCAA never gave final acceptance on Project 6500.[4]  (Joseph M. Polk ("Polk") Dep. at 132-33; Pl.'s Statement of Undisputed Material Facts ¶ 28).  Instead, the Plaintiff contacted IVP and requested that the Defendant remove and replace the defective and non-conforming cable.  (Am. Compl. ¶ 18).  After IVP's continuing refusal to replace the non-conforming cable, MSCAA decided, in May 2002, to have the cable replaced by another company.  (Pl.'s Statement of Undisputed Material Facts ¶ 27, 29).

<u>STANDARD OF REVIEW</u>

---

[3]Thereafter, IVP filed a cross claim against Jaco, which in turn filed cross claims against Nehring and Graybar, prompting IVP to also file claims against Nehring and Graybar.

[4]  GP 50-15 FINAL ACCEPTANCE of the Construction Contract provides, in relevant part, that "[u]pon due notice from the Contractor of presumptive completion of the entire project, the Engineer and Owner will make an inspection.  If all construction provided for and contemplated by the contract is found to be completed in accordance with the contract, plans and specifications, such inspection shall constitute the final inspection.  The Engineer shall notify the Contractor in writing of final acceptance as of the date of the final inspection." (Pl.'s Mot. Partial Summ. J. at 3, n. 3).

Rule 56( c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S. Ct. at 2552.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

The Plaintiff contends that IVP breached the Construction Contract by installing non-conforming electrical lighting cable and that the breach was material, thereby justifying MSCAA's subsequent repudiation.  IVP and FFIC respond that pursuant to contractual provisions, the cable IVP installed was "in reasonably close conformity" with contract specifications and argue that the resolution of whether the installed cable was "in reasonably close conformity" is a disputed question of material fact, thereby precluding summary judgment.[5]  The Defendants also claim the Plaintiff is barred from recovery because it breached the contract by failing to inspect the cable properly before installation.  The Defendants further assert that because MSCAA has withheld payment of contract funds in excess of one million dollars, the Plaintiff is not entitled to summary judgment because it is seeking a double recovery.  Finally, FFIC claims the Plaintiff has failed to carry its summary judgment burden with regard to its liability.  MSCAA replies that the "reasonably close conformity" language of the contract affords the Defendants no relief and that it did not breach the Construction Contract.  The parties do not dispute that Tennessee law applies to this matter.

Under Tennessee law, courts resolving contract disputes must give effect to the intent of contracting parties at the time of the execution of the agreement.  Planters Gin Co. v. Federal Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002).

> It is not necessarily the real intent, but the expressed or apparent intent, which is sought. The court will not attempt to ascertain the actual mental processes of the parties in entering into the particular contract; rather the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest.

---

[5]IVP submits that its argument in this regard is buttressed by MSCAA's course of action pursuant to the contract.  Specifically, IVP argues that MSCAA did not require "strict compliance" throughout the duration of the construction of Project 6500.  (Def. IVP's Mem. in Support of Mot. Summ. J. at 12).

Empress Health and Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190 -191 (Tenn. 1973) (quoting 17 Am. Jur. 2d, Contracts, § 245); see also Planters Gin Co., 78 S.W.3d at 890 (Tenn. 2002) ("The intent of the parties is presumed to be that specifically expressed in the body of the contract."). Contract language must be understood in its "usual, natural, and ordinary meaning." Bradson Mercantile, Inc. v. Crabtree, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999). "Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made." Id. Accordingly, where the contract language is clear and unambiguous, the literal meaning controls the outcome of the dispute. Planters Gin Co., 78 S.W.3d at 890. Further, an ambiguity does not arise merely because the parties disagree regarding the interpretation of specific provisions. Warren v. Metro. Gov't of Nashville and Davidson County, Tenn., 955 S.W.2d 618, 623 (Tenn. Ct. App. 1997).

I.    REASONABLY CLOSE CONFORMITY

The Plaintiff asserts that IVP breached the Construction Contract by installing non-conforming runway lighting cable. It claims the cable installed was not made of cross-linked polyethylene insulation as is required by the contract. IVP counters that the Nehring cable it installed was within "reasonably close conformity" with the contract requirements. It argues that whether the cable was within "reasonably close conformity" is a question of fact, thereby precluding summary judgment. MSCAA replies that IVP's performance was not within "reasonably close conformity" of the terms of the contract because (1) the installed cable did not meet the express requirements of the contract, and (2) the Engineer expressly declared the cable to be non-

conforming[6], ordering IVP to remove and replace it.  See supra note 4.  It is undisputed that the

Construction Contract called for the installation of cable made of cross-linked polyethylene

insulation. (Am. Compl. ¶ 9; Pl.'s Resp. Opp. Def.'s Mot. Summ. J. ("Pl.'s Resp."), Ex. T at L-108);

see supra note 2.  General Provision 50-02 of the Construction Contract, entitled "Conformity with

Plans and Specifications," states

>All work and all materials furnished shall be in reasonably close conformity with the lines, grades, grading sections, cross sections, dimensions, material requirements, and testing requirements that are specified (including specified tolerances) in the contract, plans or specifications.
>If the Engineer finds that materials furnished, work performed, or the finished product not within reasonably close conformity with the plans and specifications but that the portion of the work affected will, in his/her opinion, result in a finished product having a level of safety, economy, durability, and workmanship acceptable to the

---

[6]In addition to failing to give final acceptance on Project 6500, the Engineer also sent numerous letters to IVP

>regarding the quality of 5000 volt conductor cable supplied and installed by [the] subcontractor, Jaco Electric, on the World Runway project. Numerous instances of badly cracked conductor insulation and exposed copper wire have been discovered during Jaco Electric's on-going transformer defective connector replacement program.  These cable defects are regarded as a separate issue, and have been found . . . throughout the project. The runway guard light circuit has already burned out due to the above defect. Approximately 40% of runway and taxiway circuits are currently reading less than the specified 500 megohms. . . .
>       This is a defective materials and/or workmanship issue . . . which must be completely rectified prior to final project acceptance and start of warranty.  All parties involved . . . have been aware of insulation failures for several weeks. . . .  Regardless of cause (defective materials or workmanship), a cable system with badly cracked insulation and exposed copper wire is unacceptable.

(Am. Compl., Ex. B) (letter dated Jan. 13, 2001); see also (Am. Compl., Ex. C) (letter dated March 20, 2001) (declaring the cable as unacceptable); (Am. Compl., Ex. D) (letter dated June 12, 2001) (directing Contractor to remove and replace all cable); (Am. Compl., Ex. E) (letter dated June 19, 2001) (stating that the Contractor had been given "clear and definitive directive to proceed with removal and replacement of all L-824 cable"); (Am. Compl., Ex. F) (letter dated July 5, 2001) (directing removal and replacement); (Am. Compl., Ex. H) (letter dated Aug., 30, 2001) ("As stated in numerous previous correspondence, removal and replacement of defective cable is considered a defective materials and workmanship issue to be completely resolved before contract close-out and accept[ance].").

Owner, he will advise the Owner of his/her determination that the affected work be accepted and remains in place. . . .

<u>If the Engineer finds the materials furnished, work performed, or the finished product are not in reasonably close conformity with the plans and specifications and have resulted in an unacceptable finished product, the affected work or materials shall be removed and replaced or otherwise corrected by and at the expense of the Contractor in accordance with the Engineer's written orders.</u>

<u>For the purpose of this subsection, the term "reasonably close conformity" shall not be construed as waiving the Contractor's responsibility to complete the work in accordance with the contract, plans, and specifications. The term shall not be construed as waiving the Engineer's right to insist on strict compliance with the requirements of the contract, plans, and specifications during the Contractor's prosecution of the work, when, in the Engineer's opinion, such compliance is essential to provide an acceptable finished portion of the work.</u>

For the purpose of this subsection, the term "reasonably close conformity" is also intended to provide the Engineer with the authority to use good engineering judgment in his/her determinations as to acceptance of work that is not in strict conformity but will provide a finished product equal to or better than that intended by the requirements of the contract, plans and specifications.

(Defs.' Resp. to Pl.'s Mot. Summ. J., Ex. A) (emphasis added).

Despite the parties' rather herculean effort at document production and issue obfuscation, the Court concludes the resolution of this issue is controlled by the clear, unambiguous provisions of the Construction Contract. The contract required IVP to install underground runway lighting cable made of cross-linked polyethylene insulation. IVP failed to do so to the satisfaction of the Engineer, thereby precluding the possibility that the installed cable was in "reasonably close conformity" with the contract's material requirements, plans, or specifications under General Provision 50-02. Thereafter, the Engineer informed IVP that the installed cable was unacceptable and that it would have to be replaced. IVP refused. The Court therefore finds that IVP's installation of and failure to remove and replace the non-conforming cable constituted a material breach of the

Construction Contract.[7]  See Estate of Jesse v. White, 633 S.W.2d 767, 768 (Tenn. Ct. App. 1982) (citations omitted) (stating that a contractor's failure to adhere to the plans and specifications of a paving contract constituted a material breach of the agreement); see also Adams TV of Memphis, Inc. v. ComCorp of Tenn., 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997) (stating that Tennessee courts have adopted the criteria established in the Restatement (Second) of Contracts[8] when

---

[7]In addition to IVP and FFIC, Nehring filed a response to this motion that was adopted by Graybar.  Initially, the Court notes neither Nehring nor Graybar are a party to the instant motion for summary judgment, which was filed by MSCAA against IVP and FFIC.

In any event, Nehring/Graybar's response includes the additional argument that a genuine issue of material fact exists as to whether the cable was in "reasonably close conformity" based upon insufficient evidence.  Essentially, Nehring/Graybar argue that because such a small percentage of the cable from Project 6500 was actually tested, it is indeterminable whether the cable is in "reasonably close conformity" with the Construction Contract's requirements.

The Court admits this argument might have merit but for General Provision 50-02, which, as noted above, provides, in relevant part,

> If the Engineer finds the materials furnished, work performed, or the finished product are not in reasonably close conformity with the plans and specifications and have resulted in an unacceptable finished product, the affected work or materials shall be removed and replaced or otherwise corrected by and at the expense of the Contractor in accordance with the Engineer's written orders.

(Defs.'s Resp. to Pl.'s Mot. Summ. J., Ex. A) (emphasis added).  In this case, the Engineer found that the underground cable was not in "reasonably close conformity" with the plans and specifications and resulted in an unacceptable finished product.  Thus, the Court finds that this argument is without merit.

[8]The Restatement provides,
> (1) The extent to which the injured party will be deprived of the expected benefit of his contract;
> (2) The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (3) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (4) The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
> (5) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).

10

determining whether a breach of contract is material); 23 <u>Williston on Contracts</u> § 63.3 (4th ed.) (stating that "[a] breach is 'material' if a party <u>fails to perform a substantial part of the contract or one or more of its essential terms or conditions</u>, the breach substantially defeats the contract's purpose, or the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract") (emphasis added).

## II.   MSCAA'S ALLEGED BREACH

Initially, the Court notes IVP raised this issue in its own motion for summary judgment against the Plaintiff based upon its claim that MSCAA breached the Construction Contract by failing to inspect the cable properly before installation.  However, this Court held that MSCAA's failure to inspect the cable before installation did not relieve IVP of its duty to install cross-linked polyethylene cable.[9]  <u>See</u>  (Order Den. IVP and FFIC's Mot. Summ. J., Aug. 17, 2006, at 12-15) ("Order"). The Court notes from the previous Order that it found MSCAA had a duty under the contract to inspect the cable before installation.  To the extent that the Plaintiff breached that duty, the Court finds the breach was not material.  <u>See, e.g.</u>, <u>Burlington v. Arnold Constr. Co.</u>, 727 S.W.2d 241, 247 (Tenn. Ct. App. 1987) ("If a contractor chooses to do shoddy work, he assumes the risk of

---

[9]After requiring the Engineer to inspect, test and approve all materials used in the work prior to installation, General Provision 60-02 of the Construction Contract contemplates and sets forth liability in the event such measures are not taken.  Specifically, the provision states that

> [a]ny work in which untested materials are used without approval or written permission of the Engineer shall be performed at the Contractor's risk.  Materials found to be unacceptable and unauthorized will not be paid for and, if directed by the Engineer, shall be removed at the Contractor's expense.

(Pl.'s Resp. to Def. IVP's Mot. Summ. J., Ex. K at GP 60-02.)  Thus, pursuant to the explicit terms of the Construction Contract, failure by the Engineer to inspect, test and approve materials does not in and of itself relieve the Contractor of responsibility for the installation of nonconforming materials.  Rather, where the Contractor proceeds to install untested *and* unapproved materials that are non-conforming, it remains liable for the costs of replacement.

its discovery at a later time when the cost of correction is greater than if discovered promptly. . . . It is no defense that the owner failed to 'catch' the contractor and stop further shoddy work."). Thus, this issue affords the Defendants no relief from IVP's installation of non-conforming cable.[10]

## III.   DOUBLE RECOVERY

The Defendants contend that MSCAA's motion for summary judgment must be denied because the Plaintiff is seeking a double recovery.  IVP and FFIC claim that because MSCAA withheld over one million dollars in contract funds, it is not entitled to keep that money and also recover the amount of its expenditure in replacing the non-conforming cable.

The Court believes, relative to this contention, that the Defendants misapprehend MSCAA's motion for summary judgment.  The Court notes that the Plaintiff's motion does not even address the issue of damages, much less assert that MSCAA is entitled to an award of the cable replacement costs without consideration of the withheld contract funds.  Thus, the Court finds this issue affords IVP and FFIC no relief from IVP's installation of non-conforming cable.  See Fed. R. Civ. P. 56(c)

---

[10]In the Court's previous order denying IVP and FFIC's motion for summary judgment, it stated, "[b]ecause MSCAA's approval of cable was expressly limited to that which contained crosslinked polyethylene insulation and because a genuine issue of material fact exists as to whether the cable installed by IVP contained cable of that type, summary judgment is not appropriate."  However, the Court's previous order did not address the statement of undisputed material facts submitted by the Plaintiff in the instant motion.

In its statement of undisputed material facts in support of this motion, MSCAA lists myriad sections of cable as non-conforming cable as confirmed by testing.  The Defendants respond that not all of the cable listed by MSCAA as defective came from Project 6500.  IVP and FFIC assert that some of the non-conforming cable came from Project 6505 and is therefore not relevant to this case.  The Court notes, however, that the Defendants do not dispute that testing on certain samples taken exclusively from Project 6500 revealed the cable did not conform with the contract requirement that it be made of cross-linked polyethylene insulation.  (Pl.'s Statement of Undisputed Material Facts ¶¶ 12-29).  Thus, the Court's prior statement has no bearing on this motion.

The Court finds it undisputed for purposes of this motion that some of the cable installed on Project 6500 did not meet the contract specification that it be made of cross-linked polyethylene insulation.

("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.").

IV.    FFIC'S LIABILITY

FFIC contends that MSCAA has failed to carry the requisite burden necessary to prevail on a motion for summary judgment.  Specifically, FFIC claims the Plaintiff's motion as to FFIC "is entirely without analysis or reference to the provisions of the performance and payment bond on project 6500."  (Defs.' Resp. Pl.'s Mot. Summ. J. at 18).

Initially, the Court observes that the Plaintiff's statement of undisputed material facts addresses neither the performance and payment bond nor FFIC's liability.[11]  Moreover, MSCAA's memorandum in support of its motion is similarly devoid of any argument or citation to authority regarding FFIC's liability other than to state that if IVP is liable, FFIC should likewise be.  As there is no basis, factual or legal, presented by the Plaintiff to hold the bonding company responsible, MSCAA's motion for summary judgment against FFIC is, at this time, DENIED.  See Fed. R. Civ. P. 56(e); LR 7.2(d)(2), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn.

CONCLUSION

Based upon the foregoing, the Court finds that IVP's installation of and failure to remove and replace the non-conforming cable constituted a material breach of the Construction Contract and that IVP and FFIC's arguments in defense are not well taken.  Therefore, MSCAA's motion for summary judgment on the issue of liability as it relates to IVP is GRANTED but DENIED as it

---

[11]The Court notes the Plaintiff's reply contains a section entitled, "ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS," which also contains no facts concerning the payment bond or FFIC.  For future reference, the Court would note that a moving party is not permitted to submit a reply with an "additional statement of undisputed material facts."  See LR 7.2, Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn.  A party may, however, file a motion to supplement or amend a pleading.  See Fed. R. Civ. P. 15.

relates to FFIC.

IT IS SO ORDERED this 15th day of September, 2006.


                              s/ J. DANIEL BREEN
                              UNITED STATES DISTRICT JUDGE