IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

    Plaintiff/Counter-Defendant,

v.                                                                                  No. 01-3041 B

ILLINOIS VALLEY PAVING COMPANY,

    Defendant/Counter-Plaintiff.

_____

ILLINOIS VALLEY PAVING COMPANY,

    Third-Party Plaintiff,

v.

JACO AIRFIELD CONSTRUCTION, INC.,

    Third-Party Defendant.

_____

JACO AIRFIELD CONSTRUCTION, INC.,

    Fourth-Party Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fourth-Party Defendants.

_____

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fifth-Party Plaintiffs,

v.

AMERACE, a Division of Thomas & Betts Corporation,

   Fifth-Party Defendant.
_____

ILLINOIS VALLEY PAVING COMPANY,

   Cross-Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

   Cross-Defendants.
_____

FIREMAN'S FUND INSURANCE COMPANY,

   Defendant/Cross-Claimant,

v.

JACO AIRFIELD CONSTRUCTION, INC.,
NEHRING ELECTRICAL WORKS COMPANY, and
GRAYBAR ELECTRIC COMPANY, INC.,

   Cross-Defendants.
_____

ORDER DENYING MOTION OF NEHRING ELECTRICAL WORKS CO. AND GRAYBAR
ELECTRICAL CO., INC.  FOR SUMMARY JUDGMENT AGAINST DEFENDANTS
ILLINOIS VALLEY PAVING CO. AND JACO AIRFIELD CONSTRUCTION, INC.
_____

   Memphis-Shelby County Airport Authority ("MSCAA"), brought the instant action for breach of contract against Illinois Valley Paving Company ("IVP") and Fireman's Fund Insurance Company ("FFIC") arising from a contract between MSCAA and IVP for the reconstruction and extension of a runway at the Memphis International Airport in Memphis, Tennessee.  Before the Court is the motion of fourth-party Defendant Nehring Electrical Works Co. ("Nehring") for

summary judgment against IVP and Jaco Airfield Construction, Inc. ("Jaco") pursuant to Rule 56 of the Federal Rules of Civil Procedure. IVP and Jaco have responded, and this motion is now ripe for disposition. For the reasons set forth below, Nehring's motion for summary judgment is DENIED.[1]

## BACKGROUND

The following facts are undisputed unless noted. On April 18, 1998, MSCAA and IVP entered into a contract ("Construction Contract") pursuant to which IVP agreed to act as general contractor for the reconstruction and extension of a portion of Runway 18C-36C and related taxiway (collectively referred to as the "World Runway") at the Memphis International Airport in Memphis, Tennessee ("Project 6500"). (Am. Compl. ¶ 4, Ex. A). On December 28, 2001, MSCAA filed the instant action against IVP[2] alleging that it breached the Construction Contract by installing underground airport lighting cable that did not conform to Specifications Item L-108 requiring that such cable be made of cross-linked polyethylene insulation.[3] (Am. Compl. ¶ 21).

---

[1] Graybar also filed a motion for summary judgment against IVP and Jaco, adopting by reference the memorandum of law filed by Nehring. Therefore, the Court's order denying the motion for summary judgment applies to both Nehring and Graybar.

[2] The Plaintiff subsequently amended its complaint on September 22, 2003 to name FFIC as an additional defendant.

[3] Specification Item L-108 of the Construction Contract provides that

> [u]nderground cable shall conform to the requirements of AC 1504/5345-7, Specification for L-824 Underground Electrical Cable for Airport Lighting Circuits. Type C single and multiple conductor cables rated 600 volts and 5000 volts shall have a minimum .110 cross-linked polyethylene insulation. Multiple conductor cable shall have an overall jacket.
> (a) Cable for airfield lighting service shall be No. 8 AWG, type C, copper, 7-strand, single conductor cable with 5,000 volt cross-linked polyethylene insulation.

(Am. Compl. ¶ 9; Pl.'s Resp. Opp. Def.'s Mot. Summ. J., Ex. T at L-108 .)

Prior to entering into the contract with MSCAA, IVP subcontracted with Jaco for the installation of the electrical cable and airfield lighting system. (Am. Compl. ¶ 7). The cable in question was supplied to Jaco by Graybar Electrical Co., Inc. ("Graybar") and manufactured by Nehring. (Def. IVP's Response to Pl.'s Mot. Summ. J. at 2). On December 28, 2001, MSCAA filed the instant action against IVP alleging that IVP breached the Construction Contract by installing underground airport lighting cable that failed to conform to the contractual requirement that the cable be made of cross-linked polyethylene insulation.[4] (Am. Compl. ¶ 21). MSCAA contends that the electrical cable and lighting system are defective and unsuitable for use in the World Runway, thereby constituting a breach of the Construction Contract by IVP. (Am. Compl. ¶ ¶ 21-22).

Testing of various samples of cable from project 6500 revealed that some of the samples failed to meet FAA requirements for the degree of cross-linking. (Am. Compl.¶ 10; Pl.'s Statement of Undisputed Material Facts ¶ ¶ 23-26). Based upon the installation of non-conforming cable, MSCAA never gave final acceptance on Project 6500.[5] (Joseph M. Polk ("Polk") Dep. at 132-33; Pl.'s Statement of Undisputed Material Facts ¶ 28). Instead, MSCAA contacted IVP and requested that IVP remove and replace the defective and non-conforming cable. (Am. Compl. ¶ 18). After IVP's continuing refusal to replace the non-conforming cable, MSCAA decided, in May 2002, to have the cable replaced by another company. (Pl.'s Statement of Undisputed Material Facts ¶ ¶ 27,

---

[4] Thereafter, IVP filed a cross-claim against Jaco, which in turn filed cross-claims against Nehring and Graybar, prompting IVP to also file claims against Nehring and Graybar.

[5] GP 50-15 FINAL ACCEPTANCE of the Construction Contract provides, in relevant part, that "[u]pon due notice from the Contractor of presumptive completion of the entire project, the Engineer and Owner will make an inspection. If all construction provided for and contemplated by the contract is found to be completed in accordance with the contract, plans and specifications, such inspection shall constitute the final inspection. The Engineer shall notify the Contractor in writing of final acceptance as of the date of the final inspection." (Pl.'s Mot. Partial Summ. J. at 3, n. 3).

29). During the removal operation, entitled Project 6530, L-824C cable manufactured by Viakon, Rome, AIW, and Tamaqua was found installed on Project 6500. (Nehring's Statement of Undisputed Material Facts ¶ 10). MSCAA installed L-824C cable on Project 6500 after Jaco had finished working on Project 6500.[6] (Jaco's Resp. to Nehring's Statement of Undisputed Material Facts ¶ 10). However, Jaco installed only Nehring L-824C cable that it purchased from Graybar on Project 6500. (Id.). The parties agree that Tennessee substantive law applies.

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2552. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must

---

[6]"Jaco believes that any non-Nehring cable found on Project 6500 was either used to replace defective Nehring cable by the Airport Authority or pulled by Hypower from adjoining runways and taxiways not a part of Project 6500 during the removal and replacement process, Project 6530." (Jaco's Resp. to Nehring's Statement of Undisputed Material Facts ¶16).

be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

Nehring contends that neither IVP nor Jaco can sustain an indemnity action based upon the inability of either company to prove its damages. Nehring argues that because of the unknown quantities of L-824C cable manufactured by companies other than Nehring that were installed on Project 6500, IVP and Jaco cannot possibly provide the jury with any evidence regarding the quantity of Nehring cable, as opposed to other manufacturer's cable, installed on Project 6500. Nehring argues this prevents IVP and Jaco from providing "the trier of fact with sufficient substantial evidence to draw reasonable conclusions regarding any assessment of damages against Nehring," rendering the indemnity causes of action speculative. (Nehring's Mem. Supp. Mot. Summ. J. at 5).

IVP counters that MSCAA's lawsuit is based solely upon defective Nehring cable, "and, therefore, any amount of non-Nehring cable installed on Project 6500 is irrelevant to IVP's

indemnity claim against Nehring." (IVP's Mem. Opp. Mot. Summ. J. at 6). IVP also contends that its damages are the certain result of Nehring's defective cable. Jaco claims summary judgment is not appropriate because material facts are in dispute. Jaco points out that it installed only Nehring cable on Project 6500 and that after MSCAA began to replace defective cable, MSCAA did so with its own stock of such cable. Jaco argues that when taking this evidence in the light most favorable to the non-moving party, this Court should conclude that summary judgment is not appropriate.

Tennessee law recognizes a cause of action for indemnification. See Houseboating Corp. of Am. v. Marshall, 553 S.W.2d 588, 589 (Tenn. 1997). "[I]ndemnification is based upon the principle that a person should bear responsibility for his own wrongdoing." Starr Printing Co. v. Air Jamaica, 45 F. Supp. 2d 625, 631 (W.D. Tenn. 1999) (citing Marshall, 553 S.W.2d at 589). "To further th[is] principle[], indemnification requires the complete shifting of liability for loss from one person to another." Winter v. Smith, 914 S.W.2d 527, 541 (Tenn. Ct. App. 1995).

Indemnity obligations can be express or implied. Id. An express obligation arises from a contract between the parties, whereas an implied obligation is imposed by law without the parties' consent or agreement. Id. at 541-42. As the Winter court explained,

> [c]ourts will impose an implied obligation to indemnify when the obligation is a necessary element of the parties' relationship, Lusk v. Jim Walter Homes, Inc., 648 S.W.2d 935, 939 (Tenn. 1983); Houseboating Corp. v. Marshall, 553 S.W.2d at 589, or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties. Velsicol Chem. Corp. v. Rowe, 543 S.W.2d 337, 339 (Tenn. 1976); see also Hydro-Air Equip., Inc. v. Hyatt Corp., 852 F.2d 403, 406 (9th Cir. 1988); Facilities Dev. Corp. v. Miletta, 180 A.D.2d 97, 584 N.Y.S.2d 491, 495 (1992). In the absence of an express contract, an obligation to indemnify will be implied only if the party from who indemnification is sought breached a contract or engaged in some other related tortious conduct. Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 579

> A.2d 26, 31 (1990); First Am. Bank v. Woods, 734 S.W.2d 622, 632 (Tenn. Ct. App. 1987) (implied contractual indemnity based on negligence); Stiver Mktg., Inc. v. Performance Business Forms, Inc., App. No. 01-A-01-9108-CH-00276, slip op. at 7, 16 T.A.M. 52-7, 1991 WL 254564 (Tenn. Ct. App. Dec. 4, 1991) (No Tenn. R. App. P. 11 appl. filed).
>
> Indemnification issues arise frequently in construction litigation. Their impact can be significant because indemnification shifts the entire burden of loss or responsibility. They usually involve express contractual indemnity due to the widespread use of indemnification clauses in construction contracts, 3 Stein, supra, ¶ 13.17, but they may also involve implied indemnity claims and theories.

Id. at 542.

In this case, MSCAA's cause of action is based upon the fact that the Nehring cable did not comply with FAA regulations, resulting in a breach of the Construction Contract by IVP. IVP in turn alleges that Jaco breached its contract with IVP by installing non-conforming cable. Jaco claims the fault lies with Nehring for representing that its L-824C cable was made of cross-linked polyethylene insulation when testing revealed that it was not. In response to this, Nehring insists it is entitled to summary judgment because Jaco's damages are speculative based upon the contractor's finding L-824C cable manufactured by companies other than Nehring during Project 6530. The Court, however, finds this argument unavailing. It is undisputed that Jaco used only Nehring cable on Project 6500. Further, the evidence, taken in a light most favorable to Jaco, shows that MSCAA used L-824C cable out of its own stock to replace defective cable installed on Project 6500, which was Nehring cable. The Court finds a trier of fact could reasonably infer that the additional cable discovered during the removal project was cable installed by MSCAA to replace the defective, non-conforming Nehring cable. Nehring has failed to show that it is entitled to judgment as a matter of law on the indemnification claims of Jaco and IVP. See Winter, 914 S.W.2d

at 541-42. Thus, the motions of Nehring and Graybar for summary judgment are DENIED.

## CONCLUSION

Based upon the foregoing, the motion of Nehring for summary judgment against Jaco and IVP and the motion of Graybar[7] for summary judgment against Jaco and IVP are DENIED.

IT IS SO ORDERED this 20th day of September, 2006.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[7] See supra note 1.