IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

    Plaintiff/Counter-Defendant,

v.                                      No. 01-3041 B

ILLINOIS VALLEY PAVING COMPANY,

    Defendant/Counter-Plaintiff.

_____

ILLINOIS VALLEY PAVING COMPANY,

    Third-Party Plaintiff,

v.

JACO AIRFIELD CONSTRUCTION, INC.,

    Third-Party Defendant.

_____

JACO AIRFIELD CONSTRUCTION, INC.,

    Fourth-Party Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fourth-Party Defendants.

_____

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fifth-Party Plaintiffs,

v.
AMERACE, a Division of Thomas & Betts Corporation,

    Fifth-Party Defendant.

___

ILLINOIS VALLEY PAVING COMPANY,

    Cross-Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.

___

FIREMAN'S FUND INSURANCE COMPANY,

    Defendant/Cross-Claimant,

v.

JACO AIRFIELD CONSTRUCTION, INC.,
NEHRING ELECTRICAL WORKS COMPANY, and
GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.

___

ORDER GRANTING MOTION OF THIRD-PARTY PLAINTIFF ILLINOIS VALLEY
PAVING CO. FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY
AGAINST THIRD-PARTY DEFENDANT JACO AIRFIELD CONSTRUCTION CO., INC.

___

    Plaintiff, Memphis-Shelby County Airport Authority ("MSCAA"), brought the instant action for breach of contract against the Defendants, Illinois Valley Paving Co. ("IVP") and Fireman's Fund Insurance Co. ("FFIC") arising from a contract between MSCAA and IVP for the reconstruction and extension of a runway at the Memphis International Airport ("Airport") in Memphis, Tennessee. Before the Court is the motion of Third-Party Plaintiff IVP for summary

judgment against Jaco Airfield Construction, Inc. ("Jaco") pursuant to Rule 56 of the Federal Rules of Civil Procedure. Jaco has responded, IVP has replied, and this motion is now ripe for disposition. For the reasons set forth below, the Third-Party Plaintiff's motion for summary judgment is GRANTED.

## BACKGROUND

The following facts are undisputed unless noted. On April 18, 1998, MSCAA and IVP entered into a contract ("Construction Contract") pursuant to which IVP agreed to act as general contractor for the reconstruction and extension of a portion of Runway 18C-36C and related taxiway (collectively referred to as the "World Runway") at the Airport ("Project 6500"). (Am. Compl. ¶ 4, Ex. A). On December 28, 2001, MSCAA filed the instant action against IVP[1] alleging that it breached the Construction Contract by installing underground airport lighting cable that did not conform to Specifications Item L-108 requiring that such cable be made of cross-linked polyethylene insulation.[2] (Am. Compl.¶ 21).

Prior to entering into the contract with MSCAA, IVP subcontracted with Jaco for the installation of the electrical cable and airfield lighting system. (Am. Compl. ¶ 7). The cable

---

[1] The Plaintiff subsequently amended its complaint on September 22, 2003 to name FFIC as an additional defendant.

[2] Specification Item L-108 of the Construction Contract provides that

[u]nderground cable shall conform to the requirements of AC 1504/5345-7, Specification for L-824 Underground Electrical Cable for Airport Lighting Circuits. Type C single and multiple conductor cables rated 600 volts and 5000 volts shall have a minimum .110 cross-linked polyethylene insulation. Multiple conductor cable shall have an overall jacket.
    (a) Cable for airfield lighting service shall be No. 8 AWG, type C, copper, 7-strand, single conductor cable with 5,000 volt cross-linked polyethylene insulation.

(Am. Compl. ¶ 9; Pl.'s Resp. Opp. Def.'s Mot. Summ. J., Ex. T at L-108 .)

3

installed by Jaco on Project 6500 was supplied by Graybar Electrical Co., Inc. ("Graybar") and manufactured by Nehring Electrical Works Co. ("Nehring").  (Def. IVP's Response to Pl.'s Mot. Summ. J. at 2).  The subcontract required Jaco to comply with the provisions of the Construction Contract between IVP and MSCAA.[3]  (IVP's Statement of Undisputed Material Facts ¶ 11; Id., Ex. E).  The subcontract further provided that Jaco would be held liable for any defective work or material as long as IVP was liable under the Construction Contract.  (Id. ¶ 17).

In its original complaint, MSCAA claimed that IVP breached the Construction Contract by installing underground airport lighting cable that failed to conform to the contractual requirement that the cable be made of cross-linked polyethylene insulation.[4]  (Am. Compl. ¶ 21).  MSCAA contended that the electrical cable and lighting system were defective and unsuitable for use in the World Runway, thereby constituting a breach of the Construction Contract by IVP.  (Am. Compl. ¶¶ 21-22).

Testing of various samples of cable from project 6500 revealed that some of the samples failed to meet FAA requirements for the degree of cross-linking.  (Am. Compl.¶ 10; Pl.'s Statement of Undisputed Material Facts ¶¶ 23-26).  Based upon the installation of non-conforming cable,

---

[3]Article One of the Subcontract provides:

> The General Contract, as the term is used herein, also includes all documents appurtenant thereto including, but not limited to (1) Plans, (2) Specifications, (3) Drawings, (4) General and Special Conditions, (5) Addenda, and (6) _____ (list other documents).  The General Contract is hereby made a part of this Agreement.  <u>The SUBCONTRACTOR will adhere to and be bound by all the requirements of the General Contract.</u>

(Emphasis added).

[4]Thereafter, IVP filed a cross-claim against Jaco, which in turn filed cross-claims against Nehring and Graybar, prompting IVP to also file claims against Nehring and Graybar.

MSCAA never gave final acceptance on Project 6500.[5]  (Joseph M. Polk ("Polk") Dep. at 132-33; Pl.'s Statement of Undisputed Material Facts ¶ 28).  Instead, the Plaintiff contacted IVP and requested that the Defendant remove and replace the defective and non-conforming cable. (Am. Compl. ¶ 18).  After IVP's continuing refusal to replace the non-conforming cable, MSCAA decided, in May 2002, to have the cable replaced by another company.  (Pl.'s Statement of Undisputed Material Facts ¶ 27, 29).

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S. Ct. at 2552.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the

---

[5] GP 50-15 FINAL ACCEPTANCE of the Construction Contract provides, in relevant part, that "[u]pon due notice from the Contractor of presumptive completion of the entire project, the Engineer and Owner will make an inspection.  If all construction provided for and contemplated by the contract is found to be completed in accordance with the contract, plans and specifications, such inspection shall constitute the final inspection.  The Engineer shall notify the Contractor in writing of final acceptance as of the date of the final inspection." (Pl.'s Mot. Partial Summ. J. at 3, n. 3).

material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

IVP contends that Jaco is liable to it under the subcontract if IVP is liable to MSCAA under the Construction Contract. IVP argues that Jaco breached the subcontract when it installed underground runway lighting cable that did not entirely conform to the provision of the Construction Contract that such cable be made of cross-linked polyethylene insulation. The Third-Party Plaintiff claims that the warranty provision of the subcontract requires this Court to hold Jaco liable to IVP if this Court finds IVP is liable to MSCAA under the Construction Contract.

Jaco responds that the cable it installed was within "reasonably close conformity" of the plans and specifications of the Construction Contract, thereby precluding summary judgment. Jaco also contends that it was not required under the Construction Contract to ensure that the cable had been tested properly before installation. Jaco claims it could not be charged with the duty to inspect

the cable because such a duty was exclusively that of MSCAA and its project Engineer. It further argues that it sent a submittal of the specifications of the proposed Nehring cable to the Engineer and that the Engineer approved the submittal, which precludes a finding that Jaco breached either the subcontract or the Construction Contract. Finally, Jaco contends that IVP's indemnity claim must fail under either contractual or common law indemnity.

I.   REASONABLY CLOSE CONFORMITY

Jaco submits that it cannot be held liable under either the subcontract or the Construction Contract because the cable it installed was within "reasonably close conformity" with the Construction Contract's requirements. However, this Court recently addressed this precise issue in its order granting MSCAA's motion for summary judgment against IVP. See (Order Granting in part and Den. in part MSCAA Mot. Summ. J., Sept. 15, 2006, at 7-11). For the reasons set forth in that Order, this issue is without merit, and it affords Jaco no relief.

II.   FAILURE OF MSCAA TO INSPECT THE CABLE BEFORE INSTALLATION

Jaco next contends it should not be held liable under either contract because it cannot be charged with the duty to inspect the cable, which is explicitly the duty of the Engineer under the Construction Contract. Yet again, this Court has previously addressed this issue–twice. See (Order Den. IVP and FFIC's Mot. Summ. J., Aug. 17, 2006, at 12-15; Order Granting in part and Den. in part MSCAA Mot. Summ. J., Sept. 15, 2006, at 11-12). For the reasons set forth in those Orders, MSCAA's failure to inspect provides Jaco no support.

III.   INDEMNIFICATION

Jaco also argues that IVP cannot maintain an indemnification action against it because such an action would violate the provisions of Tennessee Code Annotated section 62-6-123. This code

7

provision states as follows:

> A covenant promise, agreement or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the <u>sole negligence</u> of the promisee, the promisee's agents or employees, or indemnitee, is against public policy and is void and unenforceable.

Tenn. Code Ann. § 62-6-123 (emphasis added). Jaco argues this section voids the indemnity clause in the subcontract because MSCAA through its Engineer was "guilty of negligence in failing to perform the tests required by the contract and allowing the uncross-linked cable to go into the project." Jaco also claims that "IVP could not violate its contract with the Airport and then attempt to pass down the liability to Jaco based upon guarantees or indemnifying agreements in the subcontract as such conduct is prohibited by T.C.A. § 62-6-123."

Initially, the Court notes Jaco's memorandum, while full of conclusory allegations concerning indemnification, is devoid of any citation to authority supporting the code section's applicability to this operative set of facts. In any event, Jaco miscasts the statute's application to this case. As written, the statute in question provides that a promisee, IVP, cannot transfer liability to a promisor, Jaco, for the sole negligence of the promisee that results in bodily harm or damage to property. <u>See, e.g.</u>, <u>Carroum v. Dover Elevator Co.</u>, 806 S.W.2d 777, 778-80 (Tenn. Ct. App. 1990).[6] The Court finds section 62-6-123 inapplicable as a defense for Jaco. There are no

---

[6]In <u>Carroum</u>, a worker was injured when an elevator malfunctioned. The worker brought suit against the elevator company, which in turn filed a third-party claim against the worker's employer for indemnification based upon an agreement. 806 S.W.2d at 777-78. The trial court granted summary judgment on the elevator company's claim. <u>Id.</u> at 778. The court of appeals reversed, finding that the following agreement specifically fell under the provisions of section 62-6-123 in a construction project

allegations that either MSCAA or IVP's negligence resulted in damage to persons or property. See, e.g., Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 465 (Tenn. Ct. App. 2003) (citation omitted) ("[Courts] use[]the terms "property damage" on the one hand and "economic loss" on the other to describe different kinds of damage a plaintiff may suffer. An action brought to recover damages for inadequate value, <u>costs of repair, and replacement of defective goods or consequent loss of profits is one for "economic loss."</u> Property damage, on the other hand, is the *Restatement's* physical harm. . .to [user's] property.") (emphasis added). Despite Jaco's argument to the contrary, this lawsuit concerns a claim for breach of contract and contains no allegations giving rise to a claim or defense based in tort. Moreover, Jaco clearly violated the <u>express provisions</u> of its subcontract with IVP, <u>notwithstanding the indemnification provision</u>, by failing to do what the Construction Contract required–installation of underground airport lighting cable made entirely of cross-linked polyethylene insulation. Thus, Jaco's argument is not well taken.

IV.     BREACH OF CONTRACT

---

setting where negligence was asserted:

> It is expressly understood and agreed, that in consideration of our performing the service specified at the price stated, you agree to indemnify, defend and save us harmless from and against any and all claims, demands, suits, proceedings, or recoveries made or brought against us at any time, and from and against all expenses, legal or otherwise, which we may sustain <u>on account of or in connection with, or arising out of any injury to any person or persons (except our employees) and/or any loss or damage to property, in any way due to or arising out of the presence, use, operation, repair, maintenance or removal of said elevators or any of them; irrespective of the manner in which such injury, loss or damage was caused</u>.

Carroum, 806 S.W.2d at 778-79 (emphasis added); see also Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 174 (Tenn. Ct. App. 2001) ("A negligent party involved in a construction contract cannot insulate itself by having an indemnity or hold harmless agreement with a third party. But the parties to a contract for the sale of goods are still free to allocate the risks between themselves . . . .").

IVP contends Jaco breached the subcontract by failing to install cable made entirely of cross-linked polyethylene insulation. Jaco responds with the previously mentioned defenses.

In this case, IVP subcontracted with Jaco for, among other things, the installation of the runway lighting system, which required the installation of underground lighting cable. The Construction Contract, made applicable to Jaco via the subcontract, required the installation of cable made of cross-linked polyethylene insulation. Jaco installed cable which, at least in part, did not comply with the provisions of the Construction Contract. As a result, the Engineer failed to give final acceptance on Project 6500. Therefore, this Court concludes that Jaco's installation of non-conforming cable was a material breach of its subcontract with IVP and that Jaco's defenses are not well taken. See Estate of Jesse v. White, 633 S.W.2d 767, 768 (Tenn. Ct. App. 1982) (citations omitted) (stating that a contractor's failure to adhere to the plans and specifications of a paving contract constituted a material breach of the agreement); see also 23 Williston on Contracts § 63.3 (4th ed.) (stating that "[a] breach is 'material' if a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions, the breach substantially defeats the contract's purpose, or the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract") (emphasis added).

## CONCLUSION

Based upon the foregoing and the Court's previous Orders in this action as referenced, IVP's motion for partial summary judgment on the issue of liability against Jaco is GRANTED.

IT IS SO ORDERED this 22nd day of September, 2006.

                                     s/ J. DANIEL BREEN
                                     UNITED STATES DISTRICT JUDGE