IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

    Plaintiff/Counter-Defendant,

v.                                                         No. 01-3041 B

ILLINOIS VALLEY PAVING COMPANY,

    Defendant/Counter-Plaintiff.

---

ILLINOIS VALLEY PAVING COMPANY,

    Third-Party Plaintiff,

v.

JACO AIRFIELD CONSTRUCTION, INC.,

    Third-Party Defendant.

---

JACO AIRFIELD CONSTRUCTION, INC.,

    Fourth-Party Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fourth-Party Defendants.

---

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fifth-Party Plaintiffs,

v.
AMERACE, a Division of Thomas & Betts Corporation,

Fifth-Party Defendant.
_____

ILLINOIS VALLEY PAVING COMPANY,

    Cross-Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.
_____

FIREMAN'S FUND INSURANCE COMPANY,

    Defendant/Cross-Claimant,

v.

JACO AIRFIELD CONSTRUCTION, INC.,
NEHRING ELECTRICAL WORKS COMPANY, and
GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.
_____

ORDER DENYING MOTION OF THIRD-PARTY PLAINTIFF ILLINOIS VALLEY PAVING
CO. FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY
AGAINST FOURTH-PARTY DEFENDANT GRAYBAR ELECTRICAL COMPANY, INC.
_____

    Plaintiff, Memphis-Shelby County Airport Authority ("MSCAA"), brought the instant action for breach of contract against the Defendants, Illinois Valley Paving Co. ("IVP") and Fireman's Fund Insurance Co. ("FFIC"), arising from a contract between MSCAA and IVP for the reconstruction and extension of a runway at the Memphis International Airport ("Airport") in Memphis, Tennessee. Before the Court is the motion of Third-Party Plaintiff, IVP, for summary

2

judgment against Fourth-Party Defendant, Graybar Electrical Co., Inc. ("Graybar"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Graybar has responded, IVP has replied, and this motion is now ripe for disposition. For the reasons set forth below, the Third-Party Plaintiff's motion for summary judgment is DENIED.

## BACKGROUND

The following facts are undisputed unless noted. On April 18, 1998, MSCAA and IVP entered into a contract ("Construction Contract") pursuant to which IVP agreed to act as general contractor for the reconstruction and extension of a portion of Runway 18C-36C and related taxiway (collectively referred to as the "World Runway") at the Airport ("Project 6500"). (Am. Compl. ¶ 4, Ex. A). On December 28, 2001, MSCAA filed the instant action against IVP[1] alleging that it breached the Construction Contract by installing underground airport lighting cable that did not conform to Specifications Item L-108 requiring that such cable be made of cross-linked polyethylene insulation.[2] (Am. Compl.¶ 21).

Prior to entering into the contract with MSCAA, IVP subcontracted with Third-Party

---

[1]The Plaintiff subsequently amended its complaint on September 22, 2003 to name FFIC as an additional defendant.

[2]Specification Item L-108 of the Construction Contract provides that

> [u]nderground cable shall conform to the requirements of AC 1504/5345-7, Specification for L-824 Underground Electrical Cable for Airport Lighting Circuits. Type C single and multiple conductor cables rated 600 volts and 5000 volts shall have a minimum .110 cross-linked polyethylene insulation. Multiple conductor cable shall have an overall jacket.
> (a) Cable for airfield lighting service shall be No. 8 AWG, type C, copper, 7-strand, single conductor cable with 5,000 volt cross-linked polyethylene insulation.

(Am. Compl. ¶ 9; Pl.'s Resp. Opp. Def.'s Mot. Summ. J., Ex. T at L-108 .)

Defendant Jaco Airfield Construction, Inc. ("Jaco") for the installation of the electrical cable and airfield lighting system. (Am. Compl. ¶ 7). The cable installed by Jaco on Project 6500 was supplied by Graybar and manufactured by Fourth-Party Defendant Nehring Electrical Works Co. ("Nehring"). (Def. IVP's Response to Pl.'s Mot. Summ. J. at 2). The subcontract required Jaco to comply with the provisions of the Construction Contract between IVP and MSCAA.[3] (IVP's Statement of Undisputed Material Facts ¶ 11; Id., Ex. E). The subcontract further provided that Jaco would be held liable for any defective work or material as long as IVP was liable under the Construction Contract. (Id. ¶ 17).

In its original complaint, MSCAA claimed that IVP breached the Construction Contract by installing underground airport lighting cable that failed to conform to the contractual requirement that the cable be made of cross-linked polyethylene insulation.[4] (Am. Compl. ¶ 21). MSCAA contended that the electrical cable and lighting system were defective and unsuitable for use in the World Runway, thereby constituting a breach of the Construction Contract by IVP. (Am. Compl. ¶¶ 21-22).

---

[3]Article One of the Subcontract provides:

> The General Contract, as the term is used herein, also includes all documents appurtenant thereto including, but not limited to (1) Plans, (2) Specifications, (3) Drawings, (4) General and Special Conditions, (5) Addenda, and (6) _____ (list other documents). The General Contract is hereby made a part of this Agreement. The SUBCONTRACTOR will adhere to and be bound by all the requirements of the General Contract.

(Emphasis added).

[4]Thereafter, IVP filed a cross-claim against Jaco, which in turn filed cross-claims against Nehring and Graybar, prompting IVP to also file claims against Nehring and Graybar.

Testing of various samples of cable from project 6500 revealed that some of the samples failed to meet FAA requirements for the degree of cross-linking. (Am. Compl.¶ 10; Pl.'s Statement of Undisputed Material Facts ¶ ¶ 23-26). Based upon the installation of non-conforming cable, MSCAA never gave final acceptance on Project 6500.[5] (Joseph M. Polk ("Polk") Dep. at 132-33; Pl.'s Statement of Undisputed Material Facts ¶ 28). Instead, the Plaintiff contacted IVP and requested that the Defendant remove and replace the defective and non-conforming cable. (Am. Compl. ¶ 18). After IVP's continuing refusal to replace the non-conforming cable, MSCAA decided, in May 2002, to have the cable replaced by another company. (Pl.'s Statement of Undisputed Material Facts ¶ 27, 29).

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). When the motion is supported by documentary proof such as depositions and

---

[5]GP 50-15 FINAL ACCEPTANCE of the Construction Contract provides, in relevant part, that "[u]pon due notice from the Contractor of presumptive completion of the entire project, the Engineer and Owner will make an inspection. If all construction provided for and contemplated by the contract is found to be completed in accordance with the contract, plans and specifications, such inspection shall constitute the final inspection. The Engineer shall notify the Contractor in writing of final acceptance as of the date of the final inspection." (Pl.'s Mot. Partial Summ. J. at 3, n. 3).

affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2552. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

IVP contends that it is entitled to summary judgment against Graybar based upon its breach of express and implied warranties. IVP further argues that Graybar expressly warranted the cable it was supplying for Project 6500 was FAA compliant, L-824c cable and that the Fourth-Party Defendant breached its express warranty by supplying non-conforming cable. The Third-Party Plaintiff also submits Graybar breached the implied warranty of merchantability found in the relevant provisions of the Uniform Commercial Code as adopted by Tennessee law. Graybar responds that the economic loss doctrine prevents IVP's recovery because it was not in privity of

contract with Graybar.[6]

Tennessee law acknowledges the economic loss doctrine, which provides that "[i]n a contract for the sale of goods where the only damages alleged come under the heading of economic losses, the rights and obligations of the buyer and seller are governed exclusively by the contract." Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001). "Consequently, a plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those losses." Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) (emphasis added). However, if the claim is one for personal injury or property damage, the economic loss doctrine does not operate as a bar to a plaintiff seeking recovery in tort. Id.; see also Tenn. Code Ann. § 29-34-104 (providing that "[i]n all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action"). The economic loss doctrine applies to both breach of express and implied warranty actions. See Walker Truck Contractors, Inc. v. Crane Carrier Co., 405 F. Supp. 911, 916-19 (E.D. Tenn. 1975); Messer Griesheim Indus., Inc., 131 S.W.3d at 463; McCrary v. Kelly Technical Coatings, Inc., 1985 WL 75663, at *2-4 (Tenn. Ct. App. Aug. 28, 1985). In support of its argument that Graybar breached its express warranty, IVP cites Motley v. Fluid Power Of Memphis, Inc., 640 S.W.2d 222 (Tenn. Ct. App. 1982), for the proposition that both the supplier and the seller may be held liable for breach of an express warranty. The Court finds IVP's argument unavailing, however, because the plaintiff

---

[6]Neither IVP nor Graybar contend that a contract existed between them for the purchase of L-824c cable for the Construction Contract. See (IVP's Mot. Summ. J. (Graybar); Graybar's Resp. IVP's Mot. Summ. J.).

in Motley was seriously injured as a result of a defective product. 640 S.W.2d at 224. Indeed, the Motley court addressed the issue of privity, noting that Tennessee Code Annotated section 29-34-104 allows for breach of warranty actions in the absence of privity of contract where the plaintiff's damages are in the nature of personal injury or property damage. Id. at 226-27.

In Messer Griesheim Indus., Inc., the court addressed the difference between economic loss and property damage:

> we used the terms "property damage" on the one hand and "economic loss" on the other to describe different kinds of damage a plaintiff may suffer. An action brought to recover damages for inadequate value, cost of repair, and replacement of defective goods or consequent[ial] loss of profits is one for "economic loss." Property damage, on the other hand, is the *Restatements* physical harm . . . to [user's] property.

131 S.W.3d at 465. The Court finds that the damages in this case are for economic loss rather than property damage as they arose out of MSCAA's claim for cost of repair and replacement of the non-conforming cable. As such, IVP's breach of express and implied warranty claims against Graybar are barred by the economic loss doctrine as IVP was not in privity of contract with Graybar.

## CONCLUSION

Based upon the foregoing and the Court's previous Orders in this action as referenced, IVP's motion for partial summary judgment on the issue of liability against Graybar is DENIED..

IT IS SO ORDERED this 26th day of October, 2006.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE