IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

    Plaintiff/Counter-Defendant,

v.                                                       No. 01-3041 B

ILLINOIS VALLEY PAVING COMPANY,

    Defendant/Counter-Plaintiff.

_____

ILLINOIS VALLEY PAVING COMPANY,

    Third-Party Plaintiff,

v.

JACO AIRFIELD CONSTRUCTION, INC.,

    Third-Party Defendant.

_____

JACO AIRFIELD CONSTRUCTION, INC.,

    Fourth-Party Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fourth-Party Defendants.

_____

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fifth-Party Plaintiffs,

v.
AMERACE, a Division of Thomas & Betts Corporation,

    Fifth-Party Defendant.

_____

ILLINOIS VALLEY PAVING COMPANY,

    Cross-Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.

_____

FIREMAN'S FUND INSURANCE COMPANY,

    Defendant/Cross-Claimant,

v.

JACO AIRFIELD CONSTRUCTION, INC.,
NEHRING ELECTRICAL WORKS COMPANY, and
GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.

_____

ORDER GRANTING MOTION OF THIRD-PARTY PLAINTIFF ILLINOIS VALLEY
PAVING CO. FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY
AGAINST FOURTH-PARTY DEFENDANT NEHRING ELECTRICAL WORKS CO.
_____

    Plaintiff, Memphis-Shelby County Airport Authority ("MSCAA"), brought the instant action for breach of contract against the Defendants, Illinois Valley Paving Co. ("IVP") and Fireman's Fund Insurance Co. ("FFIC"), arising from a contract between MSCAA and IVP for the reconstruction and extension of a runway at the Memphis International Airport ("Airport") in Memphis, Tennessee. Before the Court is the motion of Third-Party Plaintiff, IVP, for summary

judgment against Fourth-Party Defendant, Nehring Electrical Works Co. ("Nehring"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Nehring has responded, IVP has replied, and this motion is now ripe for disposition. For the reasons set forth below, the Third-Party Plaintiff's motion for summary judgment is GRANTED.

## BACKGROUND

The following facts are undisputed unless noted. On April 18, 1998, MSCAA and IVP entered into a contract ("Construction Contract") pursuant to which IVP agreed to act as general contractor for the reconstruction and extension of a portion of Runway 18C-36C and related taxiway (collectively referred to as the "World Runway") at the Airport ("Project 6500"). (Am. Compl. ¶ 4, Ex. A). On December 28, 2001, MSCAA filed the instant action against IVP[1] alleging that it breached the Construction Contract by installing underground airport lighting cable that did not conform to Specifications Item L-108 requiring that such cable be made of cross-linked polyethylene insulation.[2] (Am. Compl.¶ 21).

Prior to entering into the contract with MSCAA, IVP subcontracted with Jaco Airfield

---

[1]The Plaintiff subsequently amended its complaint on September 22, 2003 to name FFIC as an additional defendant.

[2]Specification Item L-108 of the Construction Contract provides that

> [u]nderground cable shall conform to the requirements of AC 1504/5345-7, Specification for L-824 Underground Electrical Cable for Airport Lighting Circuits. Type C single and multiple conductor cables rated 600 volts and 5000 volts shall have a minimum .110 cross-linked polyethylene insulation. Multiple conductor cable shall have an overall jacket.
> (a) Cable for airfield lighting service shall be No. 8 AWG, type C, copper, 7-strand, single conductor cable with 5,000 volt cross-linked polyethylene insulation.

(Am. Compl. ¶ 9; Pl.'s Resp. Opp. Def.'s Mot. Summ. J., Ex. T at L-108 .)

Construction, Inc. ("Jaco") for the installation of the electrical cable and airfield lighting system. (Am. Compl. ¶ 7). The cable installed by Jaco on Project 6500 was supplied by Fourth Party Defendant, Graybar Electrical Co., Inc. ("Graybar"), and manufactured by Nehring. (Def. IVP's Response to Pl.'s Mot. Summ. J. at 2). The subcontract required Jaco to comply with the provisions of the Construction Contract between IVP and MSCAA.[3] (IVP's Statement of Undisputed Material Facts ¶ 11; Id., Ex. E). The subcontract further provided that Jaco would be held liable for any defective work or material as long as IVP was liable under the Construction Contract. (Id. ¶ 17).

In its original complaint, MSCAA claimed that IVP breached the Construction Contract by installing underground airport lighting cable that failed to conform to the contractual requirement that the cable be made of cross-linked polyethylene insulation.[4] (Am. Compl. ¶ 21). MSCAA contended that the electrical cable and lighting system were defective and unsuitable for use in the World Runway, thereby constituting a breach of the Construction Contract by IVP. (Am. Compl. ¶¶ 21-22).

---

[3]Article One of the Subcontract provides:

> The General Contract, as the term is used herein, also includes all documents appurtenant thereto including, but not limited to (1) Plans, (2) Specifications, (3) Drawings, (4) General and Special Conditions, (5) Addenda, and (6) _____ (list other documents). The General Contract is hereby made a part of this Agreement. <u>The SUBCONTRACTOR will adhere to and be bound by all the requirements of the General Contract.</u>

(Emphasis added).

[4]Thereafter, IVP filed a cross-claim against Jaco, which in turn filed cross-claims against Nehring and Graybar, prompting IVP to also file claims against Nehring and Graybar.

Testing of various samples of cable from project 6500 revealed that some of the samples failed to meet FAA requirements for the degree of cross-linking. (Am. Compl.¶ 10; Pl.'s Statement of Undisputed Material Facts ¶ ¶ 23-26). Based upon the installation of non-conforming cable, MSCAA never gave final acceptance on Project 6500.[5] (Joseph M. Polk ("Polk") Dep. at 132-33; Pl.'s Statement of Undisputed Material Facts ¶ 28). Instead, the Plaintiff contacted IVP and requested that the Defendant remove and replace the defective and non-conforming cable. (Am. Compl. ¶ 18). After IVP's continuing refusal to replace the non-conforming cable, MSCAA decided, in May 2002, to have the cable replaced by another company. (Pl.'s Statement of Undisputed Material Facts ¶ 27, 29).

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). When the motion is supported by documentary proof such as depositions and

---

[5]GP 50-15 FINAL ACCEPTANCE of the Construction Contract provides, in relevant part, that "[u]pon due notice from the Contractor of presumptive completion of the entire project, the Engineer and Owner will make an inspection. If all construction provided for and contemplated by the contract is found to be completed in accordance with the contract, plans and specifications, such inspection shall constitute the final inspection. The Engineer shall notify the Contractor in writing of final acceptance as of the date of the final inspection." (Pl.'s Mot. Partial Summ. J. at 3, n. 3).

affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2552. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

IVP contends that it is entitled to summary judgment against Nehring based upon the common law doctrine of implied indemnification. It also argues that summary judgment should be granted in its favor because of Nehring's breach of express and implied warranties. Nehring responds that the economic loss doctrine prevents IVP's recovery because IVP was not in privity of contract with Nehring. Nehring also insists that material facts are in dispute, thereby precluding judgment as a matter of law. Specifically, the Fourth-Party Defendant argues that IVP's asserted damages are too speculative to sustain a cause of action. IVP replies that its lack of privity of

6

contract with Nehring does not preclude its recovery under implied indemnity or that in the alternative, Nehring should be estopped from asserting the economic loss doctrine because it failed to list it as an affirmative defense in its answer. IVP also maintains that in the event MSCAA is granted summary judgment against it, no genuine issue of material fact would remain on IVP's motion for summary judgment against Nehring.

I.   IMPLIED INDEMNIFICATION

Tennessee recognizes a common law cause of action for indemnification. See Houseboating Corp. of Am. v. Marshall, 553 S.W.2d 588, 589 (Tenn. 1977). "[I]ndemnification is based upon the principle that a person should bear responsibility for his own wrongdoing." Starr Printing Co. v. Air Jamaica, 45 F. Supp. 2d 625, 631 (W.D. Tenn. 1999) (citing Marshall, 553 S.W.2d at 589). "To further th[is] principle[], indemnification requires the complete shifting of liability for loss from one person to another." Winter v. Smith, 914 S.W.2d 527, 541 (Tenn. Ct. App. 1995).

Indemnity obligations can be express or implied. Id. An express obligation arises from a contract between the parties, whereas an implied obligation is imposed by law without the parties' consent or agreement. Id. at 541-42. As the Winter court explained,

> [c]ourts will impose an implied obligation to indemnify when the obligation is a necessary element of the parties' relationship, Lusk v. Jim Walter Homes, Inc., 648 S.W.2d 935, 939 (Tenn. 1983); Houseboating Corp. v. Marshall, 553 S.W.2d at 589, or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties. Velsicol Chem. Corp. v. Rowe, 543 S.W.2d 337, 339 (Tenn. 1976); see also Hydro-Air Equip., Inc. v. Hyatt Corp., 852 F.2d 403, 406 (9th Cir. 1988); Facilities Dev. Corp. v. Miletta, 180 A.D.2d 97, 584 N.Y.S.2d 491, 495 (1992). In the absence of an express contract, an obligation to indemnify will be implied only if the party from who indemnification is sought breached a contract or engaged in some other related tortious conduct. Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 579

7

> A.2d 26, 31 (1990); First Am. Bank v. Woods, 734 S.W.2d 622, 632 (Tenn. Ct. App. 1987) (implied contractual indemnity based on negligence); Stiver Mktg., Inc. v. Performance Business Forms, Inc., App. No. 01-A-01-9108-CH-00276, slip op. at 7, 16 T.A.M. 52-7, 1991 WL 254564 (Tenn. Ct. App. Dec. 4, 1991) (No Tenn. R. App. P. 11 appl. filed).
>
> Indemnification issues arise frequently in construction litigation. Their impact can be significant because indemnification shifts the entire burden of loss or responsibility. They usually involve express contractual indemnity due to the widespread use of indemnification clauses in construction contracts, 3 Stein, supra, ¶ 13.17, <u>but they may also involve implied indemnity claims and theories</u>.

Id. at 542 (emphasis added).

Tennessee law also acknowledges the economic loss doctrine, which provides that "[i]n a contract for the sale of goods where the only damages alleged come under the heading of economic losses, the rights and obligations of the buyer and seller are governed exclusively by the contract." Trinity Indus. v. McKinnon Bridge Co., 77 S.W.3d 159 (Tenn. Ct. App. 2001). "Consequently, a plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those losses." Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003). However, if the claim is one for personal injury or property damage, the economic loss doctrine does not operate as a bar to a plaintiff seeking recovery in tort. Id.; see also Tenn. Code Ann. § 29-34-104 (providing that "[i]n all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action").

In support of its argument that the economic loss doctrine prevents IVP's recovery against it, Nehring cites McCrary v. Keletec Coatings, Inc., 1985 WL 75663 (Tenn. Ct. App. 1985). In

McCrary, the plaintiff was hired to paint a swimming pool. McCrary, 1985 WL 75663, at *1. McCrary purchased paint manufactured by the defendant and began painting. Id. However, the product was found to be defective, whereupon the plaintiff was required to repaint the pool, using a different paint. Id. He thereafter brought a lawsuit against the defendant paint manufacturer on a theory of breach of implied warranty of merchantability. Id. at *2. On appeal, the Tennessee Court of Appeals held that due to the absence of privity of contract, the plaintiff could not sue the defendant for economic loss unless the facts of the case demonstrated the existence of personal injury or property damage.[6] Id. at *3.

The Court concludes that McCrary is distinguishable from the instant case. In McCrary, the plaintiff who purchased the defective paint brought a claim against the defendant manufacturer. In this case, however, IVP did not initiate the cause of action; rather, IVP was sued by MSCAA for its installation of non-conforming L-824C cable, which Nehring represented as being compliant with the contract specifications. This Court has previously found IVP liable for its breach of the Construction Contract by granting MSCAA's motion for summary judgment against it. See (Order

---

[6]In Messer Griesheim Industries, Inc., the court explained the difference between property damage and economic loss, stating,

> we use the terms "property damage" on the one hand and "economic loss" on the other to describe different kinds of damage a plaintiff may suffer. An action brought to recover damages for inadequate value, cost of repair, and replacement of defective goods or consequent[ial] loss of profits is one for "economic loss." Property damage, on the other hand, is the *Restatements* physical harm . . . to [user's] property.

131 S.W.3d at 465 (quoting Restatement (Second) of Torts § 402A (1965)). In this case, the Court finds that the damages allegedly sustained were for cost of repair and replacement of defective goods and therefore constitute economic loss rather than property damage.

Granting MSCAA's Mot. Summ. J., Sept. 15, 2006). Therefore, as Nehring admittedly manufactured the non-conforming cable, the Court finds that under the common law doctrine of implied indemnification, Nehring must bear the responsibility for IVP's loss.[7] See Winter, 914 S.W.2d at 541 (requiring the shifting of liability for loss to the party "whose fault or responsibility is qualitatively different from the other parties" based upon principles of equity).

II.   DISPUTED FACTS–SPECULATIVE DAMAGES

Nehring also contends that IVP's motion for summary judgment must be denied because the damages sought by it are too speculative to permit recovery. IVP replies that its damages are not suspect if the Court permits MSCAA's motion for summary judgment against it.[8]

This Court has previously rejected Nehring's argument and finds no basis to reconsider that conclusion. See (Order Den. Nehring & Graybar's Mot. Summ. J., Sept. 19, 2006, at 6-9).

CONCLUSION

Based upon the foregoing and the Court's previous Orders in this action as referenced, IVP's motion for partial summary judgment on the issue of liability against Nehring is GRANTED.

---

[7]The Court notes that had IVP initiated suit in this case against Nehring for breach of implied warranty of merchantability, the economic loss doctrine would bar recovery as IVP was not in privity of contract with Nehring. See Messer Griesheim Indus., Inc., 131 S.W.3d at 463 (stating that "a plaintiff may not maintain a claim for purely economic losses absent contractual privity"). Although it is a narrow construction, the Court concludes that the economic loss doctrine does not trump the common law doctrine of implied indemnification under the facts of this case. See Winter, 914 S.W.2d at 541.

[8]On September 15, 2006, this Court granted MSCAA's motion for summary judgment against IVP as to liability. See (Doc. #534).

IT IS SO ORDERED this 26th day of October, 2006.

                                          s/ J. DANIEL BREEN
                                          UNITED STATES DISTRICT JUDGE