IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

     Plaintiff/Counter-Defendant,

v.                            No. 01-3041 B

ILLINOIS VALLEY PAVING COMPANY,

     Defendant/Counter-Plaintiff.

_____

ILLINOIS VALLEY PAVING COMPANY,

     Third-Party Plaintiff,

v.

JACO AIRFIELD CONSTRUCTION, INC.,

     Third-Party Defendant.

_____

JACO AIRFIELD CONSTRUCTION, INC.,

     Fourth-Party Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

     Fourth-Party Defendants.

_____

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

     Fifth-Party Plaintiffs,

v.

AMERACE, a Division of Thomas & Betts Corporation,

       Fifth-Party Defendant.

_____

ILLINOIS VALLEY PAVING COMPANY,

       Cross-Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

       Cross-Defendants.

_____

FIREMAN'S FUND INSURANCE COMPANY,

       Defendant/Cross-Claimant,

v.

JACO AIRFIELD CONSTRUCTION, INC.,
NEHRING ELECTRICAL WORKS COMPANY, and
GRAYBAR ELECTRIC COMPANY, INC.,

       Cross-Defendants.

_____

### ORDER GRANTING MOTION OF FOURTH-PARTY PLAINTIFF JACO AIRFIELD CONSTRUCTION CO. FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY AGAINST FOURTH-PARTY DEFENDANT NEHRING ELECTRICAL WORKS CO.

_____

Plaintiff, Memphis-Shelby County Airport Authority ("MSCAA"), brought the instant action

for breach of contract against the Defendants, Illinois Valley Paving Co. ("IVP") and Fireman's

Fund Insurance Co. ("FFIC"), arising from a contract between MSCAA and IVP for the

reconstruction and extension of a runway at the Memphis International Airport ("Airport") in

2

Memphis, Tennessee.  Before the Court is the motion of Fourth-Party Plaintiff Jaco Airfield

Construction, Inc. ("Jaco") for summary judgment against Nehring Electrical Works Co.

("Nehring") pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Nehring has responded,

Jaco has replied, and this motion is now ripe for disposition.  For the reasons set forth below, the

Fourth-Party Plaintiff's motion for summary judgment is GRANTED.

## BACKGROUND

The following facts are undisputed unless noted.  On April 18, 1998, MSCAA and IVP

entered into a contract ("Construction Contract") pursuant to which IVP agreed to act as general

contractor for the reconstruction and extension of a portion of Runway 18C-36C and related taxiway

(collectively referred to as the "World Runway") at the Airport ("Project 6500").  (Am. Compl. ¶

4, Ex. A).  On December 28, 2001, MSCAA filed the instant action against IVP[1] alleging that it

breached the Construction Contract by installing underground airport lighting cable that did not

conform to Specifications Item L-108 requiring that such cable be made of cross-linked polyethylene

insulation.[2]  (Am. Compl.¶ 21).

Prior to entering into the contract with MSCAA, IVP subcontracted with Jaco for the

---

[1] The Plaintiff subsequently amended its complaint on September 22, 2003 to name FFIC as an additional defendant.

[2] Specification Item L-108 of the Construction Contract provides that

[u]nderground cable shall conform to the requirements of AC 1504/5345-7, Specification for L-824 Underground Electrical Cable for Airport Lighting Circuits.  Type C single and multiple conductor cables rated 600 volts and 5000 volts shall have a minimum .110 cross-linked polyethylene insulation.  Multiple conductor cable shall have an overall jacket.
> (a) Cable for airfield lighting service shall be No. 8 AWG, type C, copper, 7-strand, single conductor cable with 5,000 volt cross-linked polyethylene insulation.

(Am. Compl. ¶ 9; Pl.'s Resp. Opp. Def.'s Mot. Summ. J., Ex. T at L-108 .)

installation of the electrical cable and airfield lighting system.  (Am. Compl. ¶ 7).  The cable

installed by Jaco on Project 6500 was supplied by Fourth-Party Defendant Graybar Electric Co., Inc.

("Graybar") and manufactured by Nehring.  (Def. IVP's Response to Pl.'s Mot. Summ. J. at 2).  The

subcontract required Jaco to comply with the provisions of the Construction Contract between IVP

and MSCAA.[3]  (IVP's Statement of Undisputed Material Facts ¶ 11; Id., Ex. E).  The subcontract

further provided that Jaco would be held liable for any defective work or material as long as IVP

was liable under the Construction Contract.  (Id. ¶ 17).

In order to fulfill its obligations under the subcontract, Jaco sought bids for L-824C cable.

(Jaco's Statement of Undisputed Material Facts ¶¶ 9-11).  In response, On April 30, 1998, Graybar

sent Jaco a document entitled "Quotation," which listed, among other things, Graybar's price for L-

824C cable.  (Graybar's Resp. Opp. Jaco's Mot. Summ J., ex. I).  The reverse side of the quotation

sheet contained the following relevant provisions, entitled TERMS AND CONDITIONS OF SALE:

> 7.  WARRANTIES – Seller warrants that all goods sold are free of
> any security interest and will make available to Buyer all transferable
> warranties made to Seller by the manufacturer of the goods.
> SELLER MAKES NO OTHER EXPRESS OR IMPLIED
> WARRANTIES AND SPECIFICALLY MAKES NO IMPLIED
> WARRANTIES OF MERCHANTABILITY OR FITNESS FOR
> PURPOSE.  UNLESS OTHERWISE AGREED IN WRITING BY
> AN AUTHORIZED REPRESENTATIVE OF SELLER,

---

[3]Article One of the Subcontract provides:

> The General Contract, as the term is used herein, also includes all
> documents appurtenant thereto including, but not limited to (1) Plans, (2)
> Specifications, (3) Drawings, (4) General and Special Conditions, (5)
> Addenda, and (6) _____ (list other documents).  The General
> Contract is hereby made a part of this Agreement.  The
> SUBCONTRACTOR will adhere to and be bound by all the
> requirements of the General Contract.

(Emphasis added).

> PRODUCTS SOLD HEREUNDER ARE NOT INTENDED FOR USE IN OR IN CONNECTION WITH A NUCLEAR FACILITY.
> 8.  LIMITATION OF LIABILITY – Buyer's remedies under this agreement are subject to any limitations contained in manufacturer's terms and conditions to Seller, a copy of which will be furnished upon written request.  Furthermore, Seller's liability shall be limited to either repair or replacement of the goods or refund of the purchase price, all at Seller's option, and in no case shall Seller be liable for incidental or consequential damage.   In addition, claims for shortages, other than loss in transit must be made in writing not more than five (5) days after receipt of shipment.
>
> . . . .
>
> 10.  MODIFICATION OF TERMS AND CONDITIONS – No terms and conditions other than those stated herein, and no agreement or understanding in any way to modify these terms or conditions, shall be binding n Seller without the Seller's written consent.

(Id.).

After determining Graybar was the lowest bidder, Jaco sent to Graybar a purchase order for

the L-824C cable that also contained terms and conditions which were different and conflicted with

the proposal from Graybar.  (Jaco's Mot. Summ. J., ex. 1).  The following are the relevant

provisions:

> Indemnity: Supplier [Graybar] agrees to hold harmless and indemnify JACO from and against any and all claims, demands, actions, or causes of action, including but not limited to, any and all costs, expenses, legal fees and liabilities incurred in and about the investigation and defense thereof, arising from or in any way connected with the performance of supplier, its agents, servants, or employees under this contract.
>
> . . . .
>
> Warranty: Seller [Graybar] warrants that the goos delivered hereunder will conform strictly to the specifications, drawings, or sample specified or furnished and will be fit and sufficient for the purpose intended, of merchantable quality, of good material and workmanship, free from defect for a period of eighteen (18) months from the date of shipment, or one (1) year from the date of commercial operation.  The materials furnished hereunder shall become the property of purchaser when delivered; provided, however, that the purchaser may reject any such materials as do not

5

> comply with the specific specifications for materials and warranties of the seller and manufacturer, and any defective materials, either before or after incorporation of such materials into the project; provided such rejection is made within one (1) year of date of delivery. . . .  All manufacturer's warranties and guaranties of materials shall be transferred and assigned to the purchaser upon delivery of materials and before payment is made for such materials. This warranty shall survive any inspection, deliver or acceptance, or payment for, the goods by purchaser.  This warranty shall be in addition to all warranties provided by law.

(Id.).

In its original complaint, MSCAA claimed that IVP breached the Construction Contract by installing underground airport lighting cable that failed to conform to the contractual requirement that the cable be made of cross-linked polyethylene insulation.[4]  (Am. Compl. ¶ 21).  MSCAA contended that the electrical cable and lighting system were defective and unsuitable for use in the World Runway, thereby constituting a breach of the Construction Contract by IVP.  (Am. Compl. ¶¶ 21-22).

Testing of various samples of cable from project 6500 revealed that some of the samples failed to meet FAA requirements for the degree of cross-linking.  (Am. Compl.¶ 10; Pl.'s Statement of Undisputed Material Facts ¶ ¶ 23-26).  Based upon the installation of non-conforming cable, MSCAA never gave final acceptance on Project 6500.[5]  (Joseph M. Polk ("Polk") Dep. at 132-33;

---

[4]Thereafter, IVP filed a cross-claim against Jaco, which in turn filed cross-claims against Nehring and Graybar, prompting IVP to also file claims against Nehring and Graybar.

[5]GP 50-15 FINAL ACCEPTANCE of the Construction Contract provides, in relevant part, that "[u]pon due notice from the Contractor of presumptive completion of the entire project, the Engineer and Owner will make an inspection.  If all construction provided for and contemplated by the contract is found to be completed in accordance with the contract, plans and specifications, such inspection shall constitute the final inspection.  The Engineer shall notify the Contractor in writing of final acceptance as of the date of the final inspection." (Pl.'s Mot. Partial Summ. J. at 3, n. 3).

Pl.'s Statement of Undisputed Material Facts ¶ 28).  Instead, the Plaintiff contacted IVP and

requested that the Defendant remove and replace the defective and non-conforming cable.  (Am.

Compl. ¶ 18).  After IVP's continuing refusal to replace the non-conforming cable, MSCAA

decided, in May 2002, to have the cable replaced by another company.  (Pl.'s Statement of

Undisputed Material Facts ¶ 27, 29).

STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the moving party is entitled
> to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing

a motion for summary judgment, the evidence must be viewed in the light most favorable to the

nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct.

1348, 1356 (1986).  When the motion is supported by documentary proof such as depositions and

affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some

"specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S. Ct.

at 2552.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the

material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  These facts must

be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could

find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).  Summary judgment must

be entered "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.  In this circuit, "this requires the nonmoving party to

'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga

Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886

F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or

weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

Jaco contends that it is entitled to summary judgment against Nehring based upon Nehring's

breach of express and implied warranties.  The Fourth-Party Plaintiff further claims that Nehring

is required to indemnify it against the claims raised by MSCAA based upon Jaco's contract with

Graybar, which required Graybar to transfer all of Nehring's warranties to Jaco.  Nehring responds

that the economic loss doctrine prohibits Jaco's claims against it for breach of express and implied

warranties.  Nehring also argues that it has not duty to indemnify Jaco based upon Jaco's contract

with Graybar.  In addition, Nehring submits that Jaco cannot be granted summary judgment against

it because the Fourth-Party Plaintiff's damages, if any, are too speculative to permit recovery.  Jaco

replies that it is entitled to summary judgment against Nehring under the common law doctrine of

implied indemnification.

## I.     BREACH OF EXPRESS AND IMPLIED WARRANTIES

Tennessee law acknowledges the economic loss doctrine, which provides that "[i]n a contract

for the sale of goods where the only damages alleged come under the heading of economic losses,

the rights and obligations of the buyer and seller are governed exclusively by the contract."  Trinity

Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001).  "Consequently,

a plaintiff may not maintain a claim for purely economic losses <u>absent contractual privity with the</u>

<u>party charged with responsibility for those losses</u>."  <u>Messer Griesheim Indus., Inc. v. Cryotech of</u>

<u>Kingsport, Inc.</u>, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) (emphasis added).  However, if the

claim is one for personal injury or property damage, the economic loss doctrine does not operate as

a bar to a plaintiff seeking recovery in tort.  <u>Id.</u>; <u>see also</u> Tenn. Code Ann. § 29-34-104 (providing

that "[i]n all causes of action for personal injury or property damage brought on account of

negligence, strict liability or breach of warranty, including actions brought under the provisions of

the Uniform Commercial Code, privity shall not be a requirement to maintain said action").

In support of its argument that Nehring breached its express warranty, Jaco cites <u>Motley v.</u>

<u>Fluid Power Of Memphis, Inc.</u>, 640 S.W.2d 222 (Tenn. Ct. App. 1982), for the proposition that it

need not establish privity of contract in order to maintain an action against Nehring for breach of

warranty.  The Court finds Jaco's argument unavailing.  The plaintiff in <u>Motley</u> was seriously

injured as a result of a defective product.  640 S.W.2d at 224.  Indeed, the <u>Motley</u> court addressed

the issue of privity, noting that Tennessee Code Annotated section 29-34-104 allows for breach of

warranty actions in the absence of privity of contract where the plaintiff's damages are in the nature

of <u>personal injury</u> or <u>property damage</u>.  <u>Id.</u> at 226-27.

In <u>Messer Griesheim Indus., Inc.</u>, the court addressed the difference between economic loss

and property damage:

> we used the terms "property damage" on the one hand and "economic
> loss" on the other to describe different kinds of damage a plaintiff
> may suffer.  An action brought to recover damages for inadequate
> value, cost of repair, and replacement of defective goods or
> consequent[ial] loss of profits is one for "economic loss."  Property
> damage, on the other hand, is the *Restatements* physical harm . . . to
> [user's] property.

131 S.W.3d at 465.  The Court finds that  the damages in this case are for economic loss rather than property damage as they arose out of MSCAA's cost of repair and replacement of the non-conforming cable.  As such, Jaco's breach of express and implied warranty claims against Nehring are barred by the economic loss doctrine as Jaco was not in privity of contract with Nehring.  Therefore, Jaco's motion for summary judgment against Nehring based upon its alleged breach of express and implied warranties is DENIED.

II.    EXPRESS INDEMNIFICATION UNDER THE JACO/GRAYBAR AGREEMENT

Jaco next contends that it is entitled to summary judgment based upon the express indemnification clause in its contract with Graybar which required Graybar to transfer to Jaco any and all warranties and indemnification provisions provided by Nehring.  Nehring insists that the terms in Graybar's price quotation constitute the terms of the agreement between Jaco and Graybar and that the price quotation document expressly disavows any warranty and limits Graybar's liability.  Nehring also claims that in any event, it did not provide Graybar any express warranty or indemnification provisions.

Initially, the Court notes it has previously entered an order addressing the Jaco/Graybar contract and held that each party's conflicting provisions concerning warranty and liability cancelled each other out and that the Uniform Commercial Code as adopted by Tennessee law would supply the terms concerning those issues as applicable.  See (Order Granting Jaco's Mot. Summ. J).  Therefore, Jaco cannot rely on the terms contained within its purchase order that conflicted with the items in Graybar's quotation.  Jaco argues, however, that the conflicting forms did not cancel each other out with respect to the language requiring Graybar to transfer to Jaco any warranties from Nehring.

The Court concludes that notwithstanding Jaco's argument, it is not entitled to summary

judgment on this issue because material facts are in dispute.  Nehring claims in its response that it

did not supply Graybar with any express warranty or promise to indemnify.  In reply, Jaco has

produced a letter to refute this contention which indicates that Nehring is providing for Graybar's

defense.[6]  However, Jaco has not produced any documents originating at or around the time of the

sale of L-824c cable from Nehring to Graybar containing a warranty or promise to indemnify from

Nehring.   In the light most favorable to Nehring, Jaco has failed to establish that the

Nehring/Graybar contract included an express warranty or promise to indemnify.  Therefore, the

---

[6]On May 15, 2002, counsel for Nehring sent the following letter to counsel for Graybar:

> Dear Mr. Bill:
>
> Following up on our previous correspondence concerning Nehring's assent to take up the defense of Graybar in the above referenced matter, I am sending this letter to memorialize our understanding and agreement.
>
> Notwithstanding any disclaimers of liability for consequential or special damages contained in any warranty by Nehring, Nehring agrees to defend and hold Graybar harmless from all claims and suits for consequential or special damages arising from the material furnished by Nehring in connection with the above referenced case unless due to the negligence of Graybar's employees, agents, or servants.
>
> In light of Nehring assuming the defense of Graybar in the Fourth Party Complaint as well as holding Graybar harmless as stated above, your firm's participation as counsel on behalf of Graybar will not be necessary.  Graybar at its sole discretion and cost may choose to retain your services.

(Jaco's Reply to Nehring's Resp. to Jaco's Mot. Summ. J., Ex. 1, at 1) (emphasis added).  The Court notes that this letter was sent after the date MSCAA filed its action against IVP.  Further, the letter indicates that Nehring did not provide Graybar an express indemnification provision arising out of the sale of the L-824c cable.  In any event, given Nehring's denial that it provided any express warranty or indemnification provision to Graybar, the Court finds that Jaco has failed to establish the absence of disputed material facts.

11

Court concludes Jaco's motion for summary judgment on this basis is not well taken.

III.     IMPLIED INDEMNIFICATION

As previously mentioned, Nehring contends in its response that the economic loss doctrine bars Jaco's recovery.  In its reply, however, Jaco argues that it is entitled to recover from Nehring under the doctrine of implied indemnification if it is found liable under its agreement with IVP.

The Court addressed this exact issue in its Order granting IVP's motion for summary judgment against Nehring, concluding that the economic loss doctrine did not prevent IVP's recovery against Nehring based upon implied indemnification and the facts of the case.  See (Order Granting IVP's Mot. Summ. J., Oct. 26, 2006, at 7-10).  The Court likewise concludes that because this Court previously found Jaco breached its contract with IVP based upon its installation of defective L-824c cable, Jaco is entitled to summary judgment on the issue of liability against Nehring under the doctrine of implied indemnification.  See id.; see also (Order Granting IVP's Mot. Summ. J., Sept. 22, 2006).

IV.     DISPUTED FACTS–SPECULATIVE DAMAGES

Nehring also contends that Jaco's motion for summary judgment must be denied because the damages sought by it are too speculative to permit recovery.  Jaco replies that its damages are not suspect if the Court permits IVP's motion for summary judgment against it.[7]

This Court has previously rejected Nehring's argument and finds no basis to reconsider that conclusion.  See (Order Den. Nehring & Graybar's Mot. Summ. J., Sept. 19, 2006, at 6-9).

---

[7]On September 22, 2006, this Court granted IVP's motion for summary judgment against Jaco as to liability.

CONCLUSION

Based upon the foregoing and the Court's previous Orders in this case, the motion of Jaco for summary judgment on the issue of liability against Nehring under the doctrine of implied indemnification is GRANTED.  As to the other issues raised by Jaco, its motion for summary judgment on those bases is DENIED.

IT IS SO ORDERED this 1st day of November, 2006.


                                     s/ J. DANIEL BREEN
                                     UNITED STATES DISTRICT JUDGE