IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

    Plaintiff,

v.                                            No. 01-3041 B

ILLINOIS VALLEY PAVING COMPANY and
FIREMAN'S FUND INSURANCE COMPANY,

    Defendants.

_____

ILLINOIS VALLEY PAVING COMPANY,

    Counter-Plaintiff,

v.

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

    Counter-Defendant.

_____

ILLINOIS VALLEY PAVING COMPANY,

    Third-Party Plaintiff,

v.

JACO AIRFIELD CONSTRUCTION, INC.,

    Third-Party Defendant.

_____

JACO AIRFIELD CONSTRUCTION, INC.,

    Fourth-Party Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fourth-Party Defendants.
_____

ILLINOIS VALLEY PAVING COMPANY,

    Cross-Claimant,

v.

NEHRING ELECTRICAL WORKS COMPANY,
and GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.
_____

FIREMAN'S FUND INSURANCE COMPANY,

    Cross-Claimant,

v.

JACO AIRFIELD CONSTRUCTION, INC.,
NEHRING ELECTRICAL WORKS COMPANY, and
GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.
_____

ORDER DENYING MOTION OF PLAINTIFF MEMPHIS-SHELBY COUNTY AIRPORT
AUTHORITY FOR SUMMARY JUDGMENT AGAINST DEFENDANT FIREMAN'S FUND
INSURANCE COMPANY
_____

    Plaintiff, Memphis-Shelby County Airport Authority ("MSCAA"), brought the instant action for breach of contract against the Defendants, Illinois Valley Paving Company ("IVP") and Fireman's Fund Insurance Company ("FFIC") arising from a contract between MSCAA and IVP for the reconstruction and extension of a runway at the Memphis International Airport in Memphis,

2

Tennessee. Before the Court is MSCAA's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. FFIC has responded, MSCAA has replied to the response, and this motion is now ripe for disposition. For the reasons set forth below, the Plaintiff's motion for summary judgment is denied.

## BACKGROUND

The following facts are undisputed unless noted. On April 18, 1998, MSCAA and IVP entered into a contract ("Construction Contract") pursuant to which IVP agreed to act as general contractor for the reconstruction and extension of a portion of Runway 18C-36C and related taxiway at the Memphis International Airport in Memphis, Tennessee. (Am. Compl. ¶ 4, Ex. A.) On April 16, 1998, IVP, as the principal, and FFIC, as the surety, entered into a Performance and Payment Bond Agreement ("Bond") for the benefit of MSCAA, the obligee. (MSCAA Mot. Summ. J. at 3.) The Bond provided that FFIC would remedy any default by IVP. (MSCAA Mot. Summ. J Ex. A.) MSCAA later concluded that the underground airport lighting cable installed by IVP's subcontractor, JACO Airfield Construction, Inc., did not comply with Specification Item L-108 of the Construction Contract, requiring that such cable be made of cross-linked polyethylene insulation. (Am. Compl.¶ 21; MSCAA Mot. Summ. J. at 3.) MSCAA demanded that IVP remove and replace the cable, which IVP refused to do. (MSCAA Mot. Summ. J. at 4.) FFIC did not remedy IVP's default. (Id.) FFIC claims that it did not receive "the requisite notice of default and termination as required under the Bond to trigger [its] performance obligations." (FFIC Resp. Opp. MSCAA.'s Mot. Summ. J. ("FFIC's Resp.") at 3.) According to FFIC, the Plaintiff "unilaterally hired" another contractor to replace the cable, without giving it notice of the default, thereby depriving FFIC "of the opportunity to exercise its performance options under the Bond." (Id. at 4.) On December 28,

2001, MSCAA filed the instant action against IVP alleging that it breached the Construction Contract by installing non-conforming underground airport lighting cable. (Am. Compl. ¶ 21.) The Plaintiff subsequently amended its complaint on September 22, 2003, to name FFIC as an additional defendant. (See Am. Compl.)  On September 15, 2006, this Court granted MSCAA's motion for summary judgment against IVP, holding that "IVP's installation of and failure to remove and replace the non-conforming cable constituted a material breach of the Construction Contract." (Doc. No. 534 at 9-10.) At issue in the instant motion for summary judgment is whether, under the terms of the Bond, FFIC is liable to MSCAA for IVP's breach of the Construction Contract and for MSCAA's legal fees.

### STANDARD OF REVIEW

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by

4

a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and therefore applies Tennessee law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  A surety's liability is fixed by the terms of its contract.  U.S. Fid. & Guar. Co. v. City of Cleveland, 88 F.2d 915, 916 (6th Cir. 1937) (citation omitted); Nat'l Sur. Corp. v. Fischer Steel Corp., 374 S.W.2d 372, 375 (Tenn. 1964) ("[A] bond, whether required by statute or not, is good at common law if entered into voluntarily for a valid consideration, and if it is not repugnant to law or that policy of the law, the surety is bound according to its terms.  According to all authorities, such bond is treated as simply a contract.") (quotation omitted).  Under Tennessee law, courts resolving contract disputes must give effect to the intent of contracting parties at the time of the execution of the agreement.  Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002) (citation omitted).  The Tennessee Supreme Court has held that

> [i]t is not necessarily the real intent, but the expressed or apparent intent, which is sought. The court will not attempt to ascertain the actual mental processes of the

>parties in entering into the particular contract; rather the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest.

Empress Health & Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190 (Tenn. 1973) (quoting 17 Am. Jur. 2d Contracts, § 245); see also Planters Gin Co., 78 S.W.3d at 890 ("The intent of the parties is presumed to be that specifically expressed in the body of the contract.").

Contract language must be understood in its "usual, natural, and ordinary meaning." Bradson Mercantile, Inc. v. Crabtree, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999) (citation omitted). "Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made." Id. (citation omitted). Accordingly, where the contract language is clear and unambiguous, the literal meaning controls the outcome of the dispute. Planters Gin Co., 78 S.W.3d at 890. Further, an ambiguity does not arise merely because the parties disagree regarding the interpretation of specific provisions. Warren v. Metro. Gov't of Nashville & Davidson County, Tenn., 955 S.W.2d 618, 623 (Tenn. Ct. App. 1997) (citation omitted).

1. FFIC'S LIABILITY UNDER THE BOND FOR IVP'S BREACH OF THE CONSTRUCTION CONTRACT

MSCAA contends that it is entitled to summary judgment against FFIC because IVP materially breached the Construction Contract by installing non-conforming cable, and FFIC failed to cure that default. (MSCAA Mot. Summ. J. at 8-9.) In response, FFIC argues that MSCAA failed to give it notice of IVP's default, which it claims was a condition precedent to its obligation under the Bond to remedy IVP's default. (FFIC's Resp. at 9-15.) The Sixth Circuit has held that

>a surety is not discharged from further liability generally, on failure of the obligee to notify him of his principal's default, *where the suretyship contract contains no stipulation that such notice shall be given*, * * even where the bond requires notice, the surety is not discharged by a failure to give notice of slight defaults, which are

>  waived by the obligee; or on mere suspicion of possible default; * * * or where the surety already has knowledge or is chargeable with knowledge of the default.

United States v. Ohio Cas. Ins. Co., 399 F.2d 387, 389 (6th Cir. 1968) (quotation omitted) (emphasis added); see also Cont'l Bank & Trust Co. v. Am. Bonding Co., 605 F.2d 1049, 1056 n.17 (8th Cir. 1979) ("*In the absence of a provision in the bond agreements requiring notice to the surety upon the principal's default*, the surety is not discharged by the obligee's failure to communicate such notice.") (quotation omitted) (emphasis added).  The Tennessee Supreme Court has held that such notice "need only substantially comply with the requirements of the contract."  Andrews Distrib. Co. v. Oak Square at Gatlinburg, Inc., 757 S.W.2d 663, 668 (Tenn. 1988), *overruled on other grounds by* Spence v. Allstate Ins. Co., 883 S.W.2d 586 (Tenn. 1994).

      The Fifth Circuit has held that a surety was not liable where the bond at issue explicitly imposed liability on the surety *only* if the principal 1) was in default and 2) was declared to be in default by the obligee, and the obligee failed to declare that the principal was in default.  L&A Contracting Co. v. S. Concrete Servs., Inc., 17 F.3d 106, 109-11 (5th Cir. 1994).   In that case, the obligee sent several letters to the principal and the surety, complaining that the principal had breached the contract and requesting that the surety take the necessary steps to fulfill the contract, but the obligee never used the word "default," nor made any unequivocal declaration of default.  Id. at 108, 11.  After noting that the requirement that the principal be declared in default was unambiguous under Florida contract law, the court determined that

>  [a] declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language. *The declaration must inform the surety that the principal has committed a material breach or series of material breaches of the subcontract, that the obligee regards the subcontract as terminated*, and that the surety must immediately commence performing under the terms of its bond.

Id. at 111 (emphasis added).  Similarly, in Elm Haven Construction Ltd. v. Neri Construction LLC, 376 F.3d 96, 101 (2d Cir. 2004), the Second Circuit concluded that a surety was excused from performing under the bond where the obligee breached its obligation to the surety under the

7

terms of the performance bond to give the surety the opportunity to cure the default. In that case, the bond provided, in relevant part, that

> [w]henever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:
> (1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
> (2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee, may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;
> (3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract.

Id. at 98. The agreement between the principal and the obligee was made a part of the bond by reference. Id. That agreement outlined procedures to be followed in the event of a default by the principal, requiring the obligee to give the principal seventy two hours written notice to cure a default before the obligee could perform the work itself or hire another contractor. Id. Because the obligee hired a replacement subcontractor several weeks before declaring the principal in default, the court held that the obligee denied the surety the opportunity to complete the project itself or hire others to do so and thus failed "to trigger" the bond. Id. at 101. The court further found that the letters sent to the surety and principal before the obligee declared the principal in default at best notified these parties "that [the obligee] was exercising its rights under the default provisions of the subcontract agreement. However, the letters clearly evidenced [the obligee]'s desire to continue its arrangements with [the principal] and to keep the subcontract agreement in force." Id. at 100-01. Thus, the correspondence could not be construed as declarations of default. Id.

> In this case, the Bond executed by FFIC and IVP provides that
>
> [w]henever [IVP] shall be, and declared by [MSCAA] to be in default under the Contract, [MSCAA] having performed [its] obligations thereunder, [FFIC] may promptly remedy the default, or shall

> a. Complete the Contract in accordance with its terms and conditions, or;
> b. Obtain a bid or bids for completing the Contract in accordance with its terms and conditions . . . .

(MSCAA Mot. Summ. J. Ex. A at 2.) The Construction Contract was made a part of the Bond by reference. (Id. at 1.) GP 80-09 of the Construction Contract describes the procedures MSCAA must take in the event of a default by IVP. (FFIC's Resp. Ex. C.) According to GP 80-09, if MSCAA's engineer considers IVP to be in default, it

> shall immediately give written notice to [IVP] and [FFIC] as to the reasons for considering [IVP] in default and [MSCAA]'s intentions to terminate the contract. If [IVP] or [FFIC], within a period of 10 days after such notice, does not proceed in accordance therewith, then [MSCAA] will, upon written notification from the Engineer of the facts of such delay, neglect, or default and [IVP]'s failure to comply with such notice, have full power and authority . . . to take the prosecution of the work out of the hands of [IVP].

(Id.)

Like the bonds at issue in L&A Contracting Co., 17 F.3d at 109, and Elm Haven Construction Ltd., 376 F.3d at 100, the Bond in this case explicitly provided that FFIC's liability could only be triggered if IVP was in default and if MSCAA *declared* IVP to be in default. (MSCAA Mot. Summ. J. Ex. A at 2.) Furthermore, the Construction Contract, whose terms were incorporated into the Bond, require that MSCAA give FFIC notice of its intent to terminate the Construction Contract. (FFIC's Resp. Ex. C.) The Court finds that these provisions are unambiguous and therefore shall enforce them according to their plain terms. See Planters Gin Co., 78 S.W.3d at 890; Richland Country Club, Inc. v. CRC Equities, Inc., 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991) (citation omitted).

The record reveals that FFIC was cc'd on a series of letters sent by MSCAA's engineer to IVP about the defective electrical cable. (Pl.'s Reply Ex. B.) These documents reflect

9

MSCAA's dissatisfaction with IVP's work and several times demand that IVP remove and replace the defective cable.  (See id. at 1, 3, 5.)   However, the letters also show that MSCAA agreed in late July to "at least review a suggested additional testing program," before it would require IVP to remove and replace the cable.  (Id. at 7.)  The additional testing apparently only reinforced MSCAA's concerns with the cable.  (Id. at 12-14.)  FFIC was copied on a final letter sent in November, 2001, from MSCAA's engineer, which stated that IVP was "again directed to remove and replace all Nehring cable . . . as it has been determined to be non-conforming construction."  (Id. at 13.)   However, the letter closed with the statement that MSCAA "will agree to meet one final time to receive any proposal [IVP] wish[es] to make to remedy this breach of the contract prior to pursuing its contract remedies through litigation."   (Id. at 14.) The Defendant alleges that this was the last written communication it received from the Plaintiff before MSCAA hired another contractor, Hypower, Inc., to replace the cable.  (FFIC's Resp. at 12.)  Furthermore, FFIC claims that it was not notified by MSCAA that it had hired Hypower, Inc., until fifteen months after the fact.  (Id. at 14 & Ex E.)

   Viewing the evidence in the light most favorable to FFIC, the Court finds that this Defendant has raised genuine issues of material fact as to whether MSCAA declared that IVP was in default and whether it advised FFIC of its intent to terminate the Construction Contract, thus giving FFIC the opportunity to remedy IVP's default, as required by the Bond.  See Matsushita, 475 U.S. at 587.  There is no evidence in the record that MSCAA made a "clear, direct, and unequivocal" declaration of default.  See L&A Contracting Co., 17 F.3d at 111. While the November 8, 2001, letter sent by MSCAA's engineer expresses MSCAA's exasperation with IVP and claims that IVP breached the Construction Contract, it does not

demonstrate an intent to immediately terminate the contractual relationship between MSCAA and IVP.  See Elm Haven Constr. Ltd., 376 F.3d at 101.  Rather, it reveals that MSCAA was still willing to give IVP an additional opportunity to remedy the breach.  It would have been premature at that point for FFIC to hire another contractor, because there was still a possibility, however small, that IVP would correct the situation itself.  Therefore, based on the record before the Court, MSCAA's motion for summary judgment must be denied.

2.	FFIC'S LIABILITY UNDER THE BOND FOR MSCAA'S LEGAL FEES

The Bond specifically provides that FFIC is only liable for legal costs that result "from the actions or failure to act of [FFIC] hereunder."  (MSCAA Mot. Summ. J. Ex. A at 2.)  Because the Court denies the Plaintiff's motion for summary judgment on the basis that FFIC has raised issues of material fact as to whether MSCAA complied with the conditions precedent of the Bond, it need not reach the argument as to the Defendant's liability for the Plaintiff's legal fees.

## CONCLUSION

For the reasons articulated herein, the Court finds that MSCAA has not established with undisputed material facts that the requirements of the Bond were met and therefore **DENIES** MSCAA's motion for summary judgment against FFIC.

**IT IS SO ORDERED** this 3rd day of October, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE