IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

    Plaintiff,

v.                                       No. 01-3041 B

ILLINOIS VALLEY PAVING COMPANY and
FIREMAN'S FUND INSURANCE COMPANY,

    Defendants.

---

ILLINOIS VALLEY PAVING COMPANY,

    Counter-Plaintiff,

v.

MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,

    Counter-Defendant.

---

ILLINOIS VALLEY PAVING COMPANY,

    Third-Party Plaintiff,

v.

JACO AIRFIELD CONSTRUCTION, INC.,

    Third-Party Defendant.

---

JACO AIRFIELD CONSTRUCTION, INC.,

    Fourth-Party Plaintiff,

v.

NEHRING ELECTRICAL WORKS COMPANY,
GRAYBAR ELECTRIC COMPANY, INC.,

    Fourth-Party Defendants.

---

ILLINOIS VALLEY PAVING COMPANY,

    Cross-Claimant,

v.

NEHRING ELECTRICAL WORKS COMPANY,
and GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.

---

FIREMAN'S FUND INSURANCE COMPANY,

    Cross-Claimant,

v.

JACO AIRFIELD CONSTRUCTION, INC.,
NEHRING ELECTRICAL WORKS COMPANY, and
GRAYBAR ELECTRIC COMPANY, INC.,

    Cross-Defendants.

---

ORDER GRANTING MOTION OF FOURTH-PARTY DEFENDANT NEHRING
ELECTRICAL WORKS COMPANY FOR PARTIAL SUMMARY JUDGMENT
AGAINST ILLINOIS VALLEY PAVING COMPANY

---

Plaintiff, Memphis-Shelby County Airport Authority ("MSCAA"), brought the instant action for breach of contract against the Defendants, Illinois Valley Paving Company ("IVP") and Fireman's Fund Insurance Company ("FFIC") arising from a contract between MSCAA and IVP for the reconstruction and extension of a runway at the Memphis International Airport in Memphis, Tennessee. Before the Court is the motion of fourth-party Defendant Nehring Electrical Works

Company ("Nehring") for partial summary judgment against IVP pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 602.) IVP has responded, and this motion is now ripe for disposition. For the following reasons, Nehring's motion is granted.

BACKGROUND

The following facts are undisputed unless noted. On April 16, 1998, MSCAA and IVP entered into a contract ("Construction Contract") pursuant to which IVP agreed to act as general contractor for the reconstruction and extension of a portion of Runway 18C-36C and related taxiway (collectively referred to as the "World Runway") at the Memphis International Airport in Memphis, Tennessee ("Project 6500"). (Am. Compl. ¶ 5.) Construction began on Project 6500 in May of 1998. (Id. ¶ 3.) Prior to entering into the contract with MSCAA, IVP subcontracted with Jaco Construction, Inc. ("Jaco") for the installation of the electrical cable and airfield lighting system. (Id. ¶ 7.) The cable in question was supplied to Jaco by Graybar Electrical Co., Inc. ("Graybar") and manufactured by Nehring. (Doc No. 602, Nehring's Statement of Facts ¶¶ 5-6.)

On December 28, 2001, MSCAA filed the instant action against IVP alleging that IVP breached the Construction Contract by installing underground airport lighting cable that failed to conform to the contractual requirement that the cable be made of cross-linked polyethylene insulation.[1] (Am. Compl. ¶ 21.) MSCAA contended that the electrical cable and lighting system were defective and unsuitable for use in the World Runway, thereby constituting a breach of the Construction Contract by IVP. (Am. Compl. ¶ ¶ 21-22.) Allen & Hoshall, MSCAA's representative, engineer, and construction project manager for Project 6500, repeatedly contacted IVP in the months before MSCAA filed suit to express concern over the defective cable. (Doc. No.

---

[1] Thereafter, IVP filed a cross-claim against Jaco, which in turn filed cross-claims against Nehring and Graybar, prompting IVP to also file claims against Nehring and Graybar.

602, Nehring's Statement of Facts ¶¶ 8-14.) In its correspondence, Allen & Hoshall stated that it expected the contractor, namely IVP, to rectify the situation. (Id.) However, the letters also revealed that Jaco and Nehring were aware of MSCAA's complaints. (See Doc. No. 602 Exs. D & E, February 13, 2001 and March 20, 2001 letters from Allen & Hoshall to IVP.) Twice, both times in response to a letter sent directly to it from Jaco, Allen & Hoshall informed IVP that it would only accept correspondence sent by "the general contractor," not the subcontractors. (Doc. No. 602, Nehring's Statement of Facts ¶¶ 15-16.)

After filing suit against IVP, MSCAA hired Hypower, Inc. ("Hypower"), to remove and replace the cable on Project 6500. (Id. ¶ 31.) Hypower provided MSCAA with an estimate of $1.58 million and eventually completed the project for $1,585,984. (Id. ¶¶ 30-31.) Hypower had previously offered to do the job for IVP for $1.7 million, but IVP did not respond to its offer. (Id. ¶¶ 27-28.) According to its last interrogatory response, MSCAA is already claiming $2,923,657.47 in damages as a result of IVP's refusal to remove and replace the cable. (Id. ¶ 32.).[2]

On September 15, 2006, this Court granted MSCAA's motion for summary judgment against IVP, holding that "IVP's installation of and failure to remove and replace the non-conforming cable constituted a material breach of the Construction Contract." (Doc. No. 534, Order Granting MSCAA's Mot. for Summ. J. against IVP, at 9-10.) The Court later granted IVP's motion for partial summary judgment against Nehring and held that because Nehring manufactured the non-conforming cable, it is liable for IVP's loss under the common law theory of implied indemnity.

---

[2] Nehring contrasts IVP's behavior with that of Angelo Iafrate Construction Company ("AICC"), with whom MSCAA contracted to work on a different portion of the World Runway ("Project 6505"). (Doc. No. 602, Nehring's Statement of Facts ¶ 2.) MSCAA also accused AICC of installing faulty cable, but AICC accepted Hypower's offer to replace the cable and has not been sued. (Id. ¶¶ 12-23.)

4

(Doc. No. 559, Order Granting IVP's Mot. for Partial Summ. J. against Nehring, at 10.) On March 30, 2007, the Court reconsidered a previous Order and found that pursuant to the terms of the Construction Contract, MSCAA could recover all direct, indirect and consequential damages it incurred from IVP's failure to remove and replace the defective cable. (Doc. No. 581, Order Granting MSCAA's Mot. to Alter or Amend J., at 10.)

## STANDARD OF REVIEW

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

Nehring argues that the damages owed MSCAA can be divided into two categories: those associated with the removal and replacement of the defective cable and those associated with the subsequent litigation over the faulty cable. (Doc. No. 602, Nehring Mot. for Partial Summ. J. against IVP, at 14-15.) According to Nehring, IVP alone is responsible for MSCAA's litigation expenses, because only IVP had the obligation pursuant to the Construction Contract and Allen & Hoshall's letters to remove and replace the cable, and its refusal to do so constituted negligence. (Id. at 12-17.)

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and therefore applies Tennessee law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Tennessee law, "indemnification requires the complete shifting of liability for loss from one person to another." Winter v. Smith, 914 S.W.2d 527, 541 (Tenn. Ct. App. 1995) (citations omitted). "Courts will impose an implied obligation to indemnify . . . when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties." Id. (citations omitted). "[A]n obligation to indemnify will be implied only if the party from [whom] indemnification is sought breached a contract or engaged in some other related tortious conduct." Id. at 542 (citations omitted).

The Tennessee Supreme Court has held that attorneys' fees and litigation expenses are recoverable under the theory of implied indemnification. Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336, 338 (Tenn. 1985). The right to recover these damages

> is not based upon the failure of the indemnitor to fulfill an obligation to take over the indemnitee's defense or upon the existence of some benefit to the indemnitor arising from the defense conducted by the indemnitee. Instead, it is, like the right of the indemnitee to be indemnified for any judgment or settlement it pays, based upon the relationship between the parties and *their respective degrees of fault*.

Id. at 339 (emphasis added); see also Chambers v. City of Chattanooga, 71 S.W.3d 281, 285 (Tenn. Ct. App. 2001) ("The implied indemnity doctrine applies when one party has to incur attorney fees to defend an action resulting from another's fault."). In Pullman, the court held that the manufacturer of a railroad car could recover attorneys' fees and litigation costs from the manufacturer of a defective railroad car wheel, when the faulty wheel caused a train to derail and both parties were sued as a result. 693 S.W.2d at 339.

In this case, the Court held that IVP breached the Construction Contract when it failed to remove and replace the cable found to be defective by Allen & Hoshall. (Doc. No. 534, Order Granting MSCAA's Mot. for Summ. J. against IVP, at 9.) Specifically, the Court found that

> [t]he contract required IVP to install underground runway lighting cable made of cross-linked polyethylene insulation. IVP failed to do so to the satisfaction of the Engineer, thereby precluding the possibility that the installed cable was in "reasonably close conformity" with the contract's material requirements, plans or specifications . . . .

(Id.)  Thus, IVP's liability was based on its failure to replace the cable, even though the Construction Contract required it to do upon Allen & Hoshall's determination that it was not in "reasonably close conformity"with the requirements of the contract.

Nehring correctly points out that only IVP had the authority *and* the responsibility pursuant to the Construction Contract to remove and replace the cable.  (See id. at 8-9 (quoting General Provision 50-02 of the Construction Contract).)  Unlike Nehring, it was *contractually* bound to do so upon Allen & Hoshall's demand.  (See id. at 9.)  This case is thus different from Pullman, where the indemnitee had no contractual obligation to replace the faulty wheel manufactured by the indemnitor after its defect became apparent.  It is therefore not inconsistent for Nehring to argue that IVP should have replaced the cable pursuant to the terms of the contract and to simultaneously deny that the cable was defective or non-conforming.  Nehring's responsibilities were qualitatively different from those of IVP in this case and while Nehring must indemnify IVP for losses associated with the faulty cable, it would be unfair to hold it liable for IVP's failure to comply with the terms of the Construction Contract and replace the cable upon Allen & Hoshall's demand.[3]

---

[3] Nehring cites several cases for the proposition that an indemnitor cannot be forced to indemnify an indemnitee for its negligent acts.  However these cases are distinguishable from the present matter because they involve indemnity contracts and the decisions hinge on the construction of the contract language.  See Olin Corp. v. Yeargin Inc., 146 F.3d 398, 404 (6th Cir. 1998) (applying Tennessee law and holding that indemnity contracts must *explicitly* provide that the negligent acts of the indemnitee are covered); First Am. Nat'l Bank v. Tenn. Gas Transmission Co., 428 S.W.2d 35, 39 (Tenn. Ct. App. 1967) (same).  By contrast, Nehring was found liable based on the theory of implied indemnification.  Furthermore, neither of these cases

Nehring contends in the alternative that it should not be required to indemnify IVP for MSCAA's litigation expenses, because IVP failed to mitigate damages by removing and replacing the cable as demanded by MSCAA. (Doc. No. 602, Nehring Mot. for Partial Summ. J. against IVP, at 17-19.) In light of the fact that the Court has concluded that Nehring can only be held liable for the cost of removing and replacing the cable under the Tennessee principles of indemnification, it need not reach this issue.

## CONCLUSION

For the reasons articulated herein, the Court GRANTS Nehring's motion for partial summary judgment against IVP.

**IT IS SO ORDERED** this 28th day of March, 2008.

                               s/ J. DANIEL BREEN
                               UNITED STATES DISTRICT JUDGE

---

involves a subsequent failure by the indemnitee to remedy the alleged negligence of the indemnitor. See Olin, 146 F.3d at 400-01, 405 (where the indemnitee lied to its employees about their exposure to mercury by the indemnitor and was subsequently sued for fraudulent misrepresentation, the Sixth Circuit held that the indemnitee could not be indemnified for its *own* fraudulent conduct); First Am. Nat'l Bank, 428 S.W.2d at 40 (holding that where a grant of easement was not obtained by the indemnitiee and the indemnitor entered upon and damaged the property while performing the construction contract, liability for such damages rested upon the indemnitee); see also Kroger Co. v. Giem, 387 S.W.2d 620, (Tenn. 1964) (finding that the indemnitor was not liable for damages caused by a fire started by its employees where the indemnitee stored flammable materials near where the work was taking place and those materials proximately caused the fire). However, the indemnitees in those cases, unlike IVP, were not contractually obligated to remedy any alleged misconduct by the indemnitor.